COMMONWEALTH *vs.* DARYL GREGORY
(and a companion case).[1]

Suffolk.   October 5, 1987. — January 7, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal,* Disclosure of evidence, Conduct of prosecutor, Assistance of counsel, Capital case. *Due Process of Law,* Disclosure of evidence, Conduct of prosecutor. *Homicide. Common Law Crime. Jury and Jurors. Evidence,* Impeachment of credibility.

At a criminal trial, the defendants were not denied their Federal and State constitutional rights to a fair trial by the prosecutor's failure to disclose until late in the trial the identity and the oral statement of a "citizen" informant who had given a police officer information contained in the officer's affidavit which then formed the basis for the issuance of a search warrant, where the defendants failed to demonstrate that they suffered any adverse consequences from the prosecutor's delay in making the disclosure. [441-443]

At a murder trial, the judge did not err by his employment of the terms "murder in the second degree" and "common law murder" in instructing the jury. [443-444]

At a murder trial in which the victim's widow had introduced herself to the foreman of the jury during a break in the jury's deliberations the judge, after questioning the foreman immediately after the event and offering defense counsel the same opportunity, properly relied on the foreman's statement that he remained impartial. [444]

At a murder trial, the judge did not err by allowing the prosecution to impeach a defendant's alibi witness, his mother, on the basis of her pretrial silence where, prior to questioning the witness, the prosecution established that she knew of the pending charges in sufficient detail to realize that the alibi information would be exculpatory, that she had reason to make the information available, that she was familiar with the means of reporting it to the proper authorities, and that neither the defendant nor his lawyer had asked her to refrain from doing so. [444-445]

A defendant convicted of first degree murder could not prevail on his claim that he had been denied effective assistance of counsel, where he demonstrated no prejudice resulting from his trial attorney's alleged failures

---

[1] Commonwealth *vs.* Kenneth L. Spinkston.

to conduct formal pretrial discovery, to request funds for an investigator, and to obtain the criminal record of a prosecution witness. [445-446]

INDICTMENTS found and returned in the Superior Court Department on August 16, 1984.

The cases were tried before *James P. Donohue*, J., and motions for postconviction relief were heard by him.

*Randolph Gioia* for Daryl Gregory.

*Monroe L. Inker* (*Ann Wagner* with him) for Kenneth L. Spinkston.

*Philip T. Beauchesne*, Assistant District Attorney (*Judy G. Zeprun* with him) for the Commonwealth.

O'CONNOR, J. After a jury trial, the defendants Gregory and Spinkston were convicted of murder in the first degree and were sentenced to life in prison. They appealed to this court from those convictions. Also, Spinkston moved in the trial court for postconviction relief and, after the trial judge denied that motion without a hearing, Spinkston moved for reconsideration. The judge denied that motion without a hearing as well. Spinkston appealed from the denial of his postconviction motions. Gregory also moved in the trial court for postconviction relief. The record does not reflect that the judge took any action on his motion, but we treat Gregory's motion as having been denied, as do the parties, and we proceed as though Gregory has appealed from the denial of his motion. Thus, we have before us under G. L. c. 278, § 33E (1986 ed.), the defendants' appeals from their convictions, and from the denial of their motions for postconviction relief.

On appeal, both defendants argue that they were denied their Federal and State constitutional rights to a fair trial by the failure of the prosecution to make timely disclosure of material exculpatory evidence.[2] They also contend that, even if they are not entitled to a new trial solely on that basis, the cumulative effect of the alleged suppression and certain other occurrences

---

[2] The defendants do not claim that there is any difference between their Federal constitutional rights and their State constitutional rights.

is to create such a serious doubt concerning their guilt that a new trial is required. In this regard, both defendants rely on a perceived error in the jury instructions on murder in the second degree and on an improper communication to the jury foreman by the victim's widow. In addition, Spinkston points to his youth and his asserted lack of a criminal record, while Gregory argues that the trial judge erred by allowing the prosecutor to impeach his only alibi witness, his mother, on the basis of her pretrial silence. Gregory makes a claim of ineffective assistance of counsel as well. We affirm both convictions.

The jury could have found that, shortly before dawn on February 12, 1984, the dead body of one Andre Louis was found on the street opposite 102 Marcella Street in the Roxbury section of Boston. The body was next to the open door of the taxicab he had been operating. Louis had been shot to death. Broken glass, blood, a large stone with blood on it, and between three and four dollars were on the front seat of the cab.

Vivian Smith and Tyanne Tyler were important prosecution witnesses. Smith testified that the defendants were present in the first-floor apartment at 23 Marcella Street shortly before the killing. She testified that they left the apartment carrying a sawed-off shotgun and a .38 caliber pistol after "talking about going out and getting some money." Moments later, the witness heard three shots coming from Marcella Street. Five minutes later, Spinkston returned to the apartment speaking about a cab driver and a rock. Gregory returned some time later when Smith was asleep. When Smith awoke, Gregory was speaking about a cab driver.

Tyler testified that Spinkston had told her that he was with the person who had shot a cab driver on Marcella Street and that he, Spinkston, had "buried the guns deep." Tyler further testified that Gregory had approached her the day after the killing while they were both at the 23 Marcella Street apartment and told her to dispose of some bullets which he tried to hand her. She refused to take the bullets. Later that same day, according to the evidence, the police seized from that apartment three Super-Vel .38 caliber bullets that were the same kind that killed Louis.

Defense counsels' cross-examination of Smith highlighted an arguable inconsistency between her original statement to the police and her testimony. Also, counsel elicited from Smith that she was a prostitute and had been arrested seven times under two aliases. Smith's testimony on cross-examination warranted an inference that her testimony was motivated by a selfish interest in pleasing the prosecution. Tyler admitted on cross-examination that she would readily lie to avoid prosecution on a charge of possession of heroin which was pending at the time she spoke to the police about the defendants' involvement in Louis's killing. In the presentation of their case, the defendants introduced evidence that they were not at 23 Marcella Street before or immediately after the killing, and that they were at other specified locations.

The police discovered the three Super-Vel .38 caliber bullets that they seized from the first floor apartment at 23 Marcella Street during a search for drugs pursuant to a warrant. That warrant had been issued on the basis of an affidavit signed by Detective William Ingersoll of the Boston police department. It was not until the prosecution offered the bullets in evidence near the close of the Commonwealth's case that the prosecution disclosed to the defendants the existence of the warrant and Ingersoll's affidavit. The affidavit stated in part that a "citizen" had approached Ingersoll the day after the killing and had told Ingersoll that he had seen Louis's picture in the newspaper and recognized Louis as a cab driver who frequented the first floor apartment at 23 Marcella Street. According to Ingersoll's affidavit, the citizen said that he lived in the building at 23 Marcella Street, that during the three months immediately preceding the killing he had observed heavy drug traffic coming to the first-floor apartment, and that during that period Louis made four or five trips per night to the apartment and picked up packages that were consistent with the packaging of narcotic drugs. Also, according to the affidavit, the citizen told Ingersoll that two or three nights before Louis was killed the citizen saw Louis enter the first-floor apartment, that he heard people arguing in the apartment, that he saw Louis flee to his taxicab, and that shots were fired at Louis from the apartment as Louis

drove away. There was no reference to either defendant in Ingersoll's affidavit.

On the day following the prosecution's disclosure to the defendants of the warrant and supporting affidavit, the prosecution revealed to the defendants' counsel that one Elvin Johnson was the citizen who had given Ingersoll the information contained in his affidavit. Defense counsel then moved that the Commonwealth be required to produce Johnson. The judge ordered that a capias issue. On the next day, Ingersoll reported to the judge at a voir dire hearing that he had been unable to locate Johnson and that, according to the information he had received, Johnson had not been seen by his relatives and acquaintances for several months. The judge denied the defendants' requests that the trial be continued in order that a further search might be conducted. He concluded that a thorough search for Johnson had been made and that a further search was not likely to be fruitful.

The defendants' argument concerning the prosecution's delay in disclosing evidence focuses on its failure to disclose Johnson's identity and oral statement until late in the trial. The gist of the defendants' argument is that the prosecution tried the case on the theory that the defendants murdered Louis in furtherance of a robbery attempt, that the prosecution's theory depended almost entirely on highly vulnerable testimony given by Smith and Tyler, and that Johnson's observations forcefully suggest that the genesis of Louis's murder was not a robbery attempt but rather a dispute arising out of drug dealings with which the defendants were not shown to have any connection. Therefore, the defendants argue, if Johnson's observations had been in evidence, a thin case would have been substantially thinner; the prosecution's delayed disclosure deprived the defendants of evidence that would have created a reasonable doubt, not otherwise present, about their guilt.

Ordinarily, due process requires that the prosecution make timely disclosure to a defendant of exculpatory material evidence in its possession. See *United States* v. *Agurs,* 427 U.S. 97, 103-114 (1976); *Brady* v. *Maryland,* 373 U.S. 83, 87 (1963); *Commonwealth* v. *Lam Hue To,* 39 Mass. 301, 308

(1984); *Commonwealth* v. *Wilson,* 381 Mass. 90, 107 (1980). Exculpatory evidence includes "evidence which provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness." *Commonwealth* v. *Ellison,* 376 Mass. 1, 22 (1978).

Undisclosed exculpatory evidence is "material" if, "evaluated in the context of the entire record," it "creates a reasonable doubt that did not otherwise exist." *United States* v. *Agurs, supra* at 112. *Commonwealth* v. *Gallarelli,* 399 Mass. 17, 21 (1987). *Commonwealth* v. *Collins,* 386 Mass. 1, 9-10 (1982). When a defendant makes a specific request for reasonably identified evidence, the evidence is deemed material even if it only provides "a substantial basis for claiming materiality exists." *Commonwealth* v. *Gallarelli, supra* at 20, quoting *Commonwealth* v. *Wilson, supra* at 108-109.

In this case, the prosecution disclosed Johnson's oral statement and his identity, but the disclosure was delayed until late in the trial. "Where the defense has not made a specific request for the evidence whose disclosure is delayed, the question becomes whether, given a timely disclosure, the defense would have been able to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Commonwealth* v. *Wilson, supra* at 114. On the other hand, where a specific request has been made, the appropriate question is whether, given a timely disclosure, the defense would have been able to prepare and present its case in such a manner as to create "a substantial basis for claiming materiality exists." *Commonwealth* v. *Gallarelli, supra* at 20.

There is nothing in the record that would warrant a conclusion that, if the prosecution had disclosed Johnson's identity and statement to the defendants in advance of trial, the defendants could have presented Johnson's observations to the jury. The presentation of Johnson's observations through Ingersoll's testimony would have been barred by the rule against the admission in evidence of hearsay. Johnson's observations could have

been brought to the jury's attention, as a matter of right, only through Johnson's testimony, and there is nothing in the record that suggests that Johnson was amenable to subpoena or otherwise available to the defendants to testify. On the contrary, the only evidence in the record is that Johnson had not been seen by his relatives and friends for several months before the trial. Furthermore, there is nothing in the record to suggest that, if there had been early disclosure, the defendants would have had reason to preserve Johnson's testimony, or that, if the trial judge had granted the continuance requested by the defendants, Johnson could have been located. In fact, there is nothing in the record to suggest the likelihood that Johnson would be available to testify at a new trial if one were ordered. Nor have the defendants shown that they could have made any other use of the information given to Ingersoll by Johnson. It is entirely speculative, therefore, whether, "given a timely disclosure, the defense would have been able to prepare and present its case in such a manner as to create [either] a reasonable doubt that would not otherwise have existed" or so as to create a substantial basis for claiming materiality exists. Thus, we need not decide whether Johnson's observations were exculpatory, which the defendants assert and the Commonwealth denies, nor do we need to resolve the question, argued by Spinkston and the Commonwealth, whether Spinkston specifically requested statements such as Johnson's. In any event, "it is the consequences of the delay that matter," *Commonwealth* v. *Wilson, supra* at 114, quoting *Commonwealth* v. *Adrey,* 376 Mass. 747, 755 (1978), and the defendants have failed to demonstrate that they suffered any adverse consequences from the Commonwealth's delay in disclosing evidence.

In addition to their Fourteenth Amendment claims, both defendants present two arguments with which we deal briefly. First, they argue that, although the judge correctly defined common law murder and "deliberately premeditated malice aforethought," "extreme atrocity or cruelty," felony-murder, and armed robbery as those concepts bear on murder in the first degree, and although the judge instructed the jury that

murder not in the first degree is murder in the second degree, the judge never told the jury that common law murder as he defined it was, in fact, murder in the second degree. There was no error. It would have been clear to any rational juror from the instructions as a whole that the judge was using the terms "murder in the second degree" and "common law murder" interchangeably. As the judge said, any murder that did not qualify as murder in the first degree was murder in the second degree. The judge's message was further fortified by his clear instruction that there were only three possible verdicts: murder in the first degree, murder in the second degree, or not guilty.

The defendants also assert that they are entitled to relief because the victim's widow introduced herself to the foreman of the jury at the luncheon break on the fifth day of trial, informing him that she was the victim's widow. The judge questioned the foreman immediately after that event. Counsel were also offered the opportunity to question the foreman. The foreman stated that he remained impartial and the judge accepted his statement as true. In such a situation, a judge may properly rely on a juror's statement that he remains impartial. *Commonwealth* v. *Grant,* 391 Mass. 645, 653 (1984).

The defendant Gregory argues that the trial judge committed prejudicial error by allowing the prosecution to impeach his alibi witness, his mother, on the basis of her pretrial silence. Gregory's mother testified that she was with Gregory in their living room when they heard the shots that killed Louis. On cross-examination, over objection, the prosecution established that the witness had never before reported that fact, that long before the trial she knew of her son's arrest and the charges against him, and that she knew and had frequent contact with two detectives who were involved in her son's case. She also testified that she had not reported that her son was at home with her when Louis was killed because she believed that no one would listen to her.

In *Commonwealth* v. *Brown,* 11 Mass. App. Ct. 288, 296-297 (1981), the Appeals Court established guidelines for laying a foundation before challenging a defense witness on the basis of pretrial silence. The court held that, before the Common-

wealth could question a witness on pretrial silence and thereby implicate that witness as having recently fabricated testimony, the Commonwealth must establish that "the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so." In subsequent cases, this court has adopted those guidelines. *Commonwealth* v. *Nickerson,* 386 Mass. 54, 58 n.4 (1982). *Commonwealth* v. *Berth,* 385 Mass. 784, 790-791 (1982). The Commonwealth met the *Brown* requirements. Gregory argues that "there was absolutely no evidence that either the defendant or the defendant's lawyer had not asked [the witness] to refrain from speaking with the detectives." We disagree. The witness's testimony that the reason she did not come forward earlier was that she believed no one would listen to her (which the jury was free to believe or disbelieve) warrants the inference that her reason for not coming forward sooner was not that she had been asked to refrain from doing so. See *Commonwealth* v. *Barros,* 24 Mass. App. Ct. 964 (1987).

Gregory's final argument, raised for the first time on appeal, is that his trial counsel's failure to conduct formal pretrial discovery and to request funds for an investigator, and his failure to obtain the criminal record of the Commonwealth's witness, Smith, constituted ineffective assistance of counsel. The short answer to this argument is that Gregory has not shown prejudice as a result of any of these failures. Without such a showing, the argument fails. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We note that, although Smith's criminal record, if she had one, was not introduced in evidence, Gregory's counsel elicited testimony from Smith that she had been arrested seven times under two aliases for prostitution. There has been no showing that Smith had a criminal record which would be other than cumulative. See *Commonwealth* v. *Bertrand,* 385 Mass. 356, 368 (1982); *Commonwealth* v. *Daigle,* 379 Mass. 541, 544-545 (1980).

Lastly, Spinkston requests that, because of his youth and asserted lack of a prior criminal record in addition to the claimed errors discussed above, we should exercise our power under G. L. c. 278, § 33E, to award him a new trial. We are satisfied that the interests of justice do not call for relief under § 33E.

*Judgments affirmed.*

*Denial of motions for postconviction relief affirmed.*