## COMMONWEALTH *vs.* RONALD McCOY.

Suffolk. February 9, 2010. - May 20, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, BOTSFORD, & GANTS, JJ.

*Rape. Kidnapping. Assault and Battery. Jury and Jurors. Evidence,* First complaint, Cumulative evidence. *Error, Harmless. Practice, Criminal,* Jury and jurors, Challenge to jurors, Examination of jurors, Voir dire, Harmless error, Lesser included offense, Duplicative convictions.

At the trial of indictments charging the defendant with kidnapping, rape, and assault and battery (crimes not punishable by imprisonment for life), the judge did not abuse his discretion in denying the defendant's request for peremptory challenges in addition to the four permitted by Mass. R. Crim. P. 20 (c) (1), where the defendant did not show a concrete need for additional challenges, particularly where he did not exercise his final peremptory challenge until the last juror was seated and did not inform the judge that he would have exercised a peremptory challenge on a seated juror had he been afforded additional challenges [841-842]; further, there was no merit to the claims that the judge conducted insufficient voir dire questioning of six specific venire members or that the verdicts were the result of jury compromise or jury bias [842-844].

At the trial of indictments charging the defendant with kidnapping, rape, and assault and battery, in which a police officer testified as the first complaint witness, testimony from three additional witnesses about the rape of the victim acted as cumulative first complaint witness testimony and was error, · but the error did not create a substantial risk of a miscarriage of justice, where the inconsistencies contained in the cumulative first complaint testimony were more important to the defense than the Commonwealth; where, in the context of the entire trial, it was reasonable to conclude that the errors did not materially influence the verdicts; and where it was reasonable to infer that defense counsel's failure to object to the testimony was a tactical decision. [844-853] MARSHALL, C.J., concurring, with whom BOTSFORD and GANTS, JJ., joined.

At a criminal trial, the judge did not err in sentencing the defendant independently following convictions of kidnapping, rape, and assault and battery, where the convictions of kidnapping and assault and battery were not lesser included offenses of the conviction of rape. [853-854]

INDICTMENTS found and returned in the Superior Court Department on September 13, 2002.

The cases were tried before *Patrick F. Brady,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph J. Mazza* for the defendant.

*Janis DiLoreto Noble*, Assistant District Attorney (*Cory S. Flashner*, Assistant District Attorney, with her) for the Commonwealth.

Spina, J. The defendant was convicted by a jury of kidnapping, rape, and assault and battery.[1] In a memorandum and order pursuant to its rule 1:28, the Appeals Court reversed the defendant's convictions on all charges, holding that the testimony of the victim's mother and the sexual assault nurse examiner (SANE) constituted improper first complaint testimony that created a substantial risk of a miscarriage of justice. *Commonwealth* v. *McCoy*, 73 Mass. App. Ct. 1127 (2009). We granted the Commonwealth's application for further appellate review.

The defendant contends that his convictions should be reversed because (1) the trial judge improperly denied his request for additional peremptory challenges, resulting in a biased jury; (2) after the testimony of a designated first complaint witness, the erroneous allowance of cumulative first complaint testimony without limiting instructions created a substantial risk of a miscarriage of justice; and (3) the kidnap and assault convictions are lesser included offenses of the rape charge and should be dismissed. For the reasons that follow, we affirm the convictions.

1. *Facts.* We recite facts that the jury could have found, reserving the development of other facts to the discussion of specific issues.

On February 26, 1996, the victim spent the evening at a friend's house, where both women used "crack" cocaine. Between 8 and 9 p.m., she left that friend's house and went across the street to the apartment of another friend, where, prior to leaving at 2 or 3 a.m., she consumed two "shots" of alcohol and four beers. She testified that, at that time, neither the crack cocaine nor the alcohol affected her "ability to perceive things." She intended to walk to her home in the Roxbury section of Boston, where she lived with her mother and children. However,

---

[1]The jury acquitted the defendant of assault and battery by means of a dangerous weapon and assault with intent to rape.

shortly after the victim left her friend's apartment, a red pickup truck pulled over in front of her. The driver called out her name, asked her where she was going, and offered her a ride home. She recognized the driver of the truck as an acquaintance she knew through her boy friend, and accepted the offer for a ride. At trial, she identified the defendant as the driver of that truck.

The victim entered the truck and agreed that the defendant could first pick up his girl friend before taking her home. However, he drove down a dead-end street near Franklin Park, turned the truck around, and turned off the ignition and lights. At that point, the victim reached for the door in an attempt to get out of the truck, but the defendant grabbed the collar of her shirt and jacket, preventing her from leaving. He pulled her head toward his penis, which was exposed through the open zipper of his pants. She resisted and asked him to take her home. As she attempted to resist, he slapped her on the lip and left side of her face, pushing her down onto the seat of the truck.

The defendant then told the victim to pull her pants down. When she refused, he hit her again and she briefly lost consciousness. She awoke with one leg of her pants removed and the defendant on top of her, engaging in sexual intercourse. He said that he would have killed her if he had a knife or gun, and forcibly kicked her out of the truck with his boots. When she landed on the ground outside the truck, the defendant drove away. She put her pants back on and crawled toward the main street, where she lay down in the road until an unidentified man picked her up and drove her to a police station.

The victim arrived at the police station around 4:30 A.M. and spoke with Officer Bernard Doyle, who was the desk officer. She related details from the assault and described her assailant and his vehicle. Doyle noticed that her lower lip was swollen. He summoned an ambulance, which took her to Boston Medical Center, to complete a rape kit examination and interview with a SANE nurse. After the examination, she returned home with her mother.

That day, Detective Thomas Keeley commenced the initial investigation of the rape. This investigation included an interview with the victim and a visit to the area of the attack. The initial investigation did not yield any leads, and the victim eventually indicated her desire to drop the case.

In 1999, the victim was leaving an Alcoholics Anonymous meeting when she recognized the defendant in an elevator. They had a brief exchange; he introduced himself as "Ron" and confirmed that he occasionally drove a red truck, which belonged to his employer. She contacted the police, who told her to call 911 if she saw him again.

In June, 2001, the Boston police crime laboratory notified Keeley that the deoxyribonucleic acid (DNA) profile from the victim's rape kit matched the known DNA profile of the defendant. He gave a blood sample on July 1, 2002, and the victim gave a blood sample on July 24, 2002. Further testing confirmed the link.

2. *Juror selection.* The defendant's first argument on appeal is that the judge erred in limiting the parties to four peremptory challenges, allowing biased jurors to be seated, and conducting insufficient and limited voir dire questioning, thereby precluding a fundamentally fair trial by an impartial jury. These arguments are without merit.

During jury selection, defense counsel moved for two additional peremptory challenges, for a total of six. He claimed that because more than thirty people had raised their hands when asked whether they or anyone in their families had ever been the victim of a violent crime, including sexual assault, additional peremptory strikes were needed in order to choose an impartial jury. The judge denied the request.

A defendant indicted for a crime not punishable by imprisonment for life is entitled to four peremptory challenges, although the judge may, as a matter of discretion, allow motions for additional challenges. See Mass. R. Crim. P. 20 (c) (1), 378 Mass. 889 (1979); *Commonwealth* v. *Burden*, 15 Mass. App. Ct. 666, 674-675 (1983). Here, the judge did not abuse his discretion in denying the defendant's request, as the defendant did not show a concrete need for additional challenges, particularly where he did not exercise his final peremptory challenge until the last juror was being seated and did not inform the judge that he would have exercised a peremptory challenge on a seated juror had he been afforded additional challenges. See *Commonwealth* v. *Leahy*, 445 Mass. 481, 497 (2005) (no error where defendant did not exercise his last peremptory challenge until final seat on

jury was being filled, thus failing to show that he was forced to accept juror he would have peremptorily challenged).

The defendant next argues that the judge conducted insufficient voir dire questioning of six specific venire members, resulting in prejudice. "The scope of voir dire rests in the sound discretion of the trial judge, and a determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous." *Commonwealth* v. *Lopes*, 440 Mass. 731, 736 (2004). See *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 443 (2001) ("we will not conclude that the judge abused his discretion by empanelling the juror unless juror prejudice is manifest"). Where a defendant fails to challenge a juror for cause, the questions of the impartiality of that juror and the adequacy of voir dire are waived. Cf. *Commonwealth* v. *Auguste*, 414 Mass. 51, 53-58 (1992); *Commonwealth* v. *Zakas*, 358 Mass. 265, 268 (1970). If the issue has been preserved, prejudice generally is shown by the use of a peremptory challenge to remove the juror who allegedly should have been excused for cause *together with* evidence that the defendant later was forced to accept a juror he would have challenged peremptorily but was unable to because his peremptory challenges had been exhausted. See *Commonwealth* v. *Auguste, supra* at 58; *Commonwealth* v. *Susi*, 394 Mass. 784, 789 (1985).

First, the defendant requested that the judge inquire into Juror A's potential bias because the juror's brother was a police officer. The judge declined to do so because the juror did not indicate any partiality during the questioning of the entire venire. A prospective juror who does not come forward in response to a judge's questioning of the full venire is "[impliedly representing] that he or she is not biased." *Commonwealth* v. *Duddie Ford, Inc.*, 409 Mass. 387, 393 (1991). The defendant did not challenge Juror A for cause.

Next, Juror B indicated that the defendant looked familiar, and she may have seen him at a check cashing establishment where she was employed. After questioning, the judge found this juror to be impartial, and the defendant did not challenge her for cause. He argues that Juror B had raised her hand, indicating she or a family member had been a victim of violent crime, and failure to question her on this was error. However, the juror

stated during the voir dire that she had nothing else to indicate to the court and that she had not raised her hand for any other reason.

Juror C informed the judge that she had been a victim of a sexual assault in college, and the judge questioned her on her ability to be impartial as a result. The defendant argues that Juror C should have been questioned further on the outcome of her case, and that the judge's questioning regarding potential bias served to "cajole" the woman into responding that she could be fair and impartial. During voir dire, the judge asked the juror to consider her own possible bias, and then asked her whether she could be fair and impartial. Reading the questioning of Juror C as a whole, there was no cajoling of the juror. Furthermore, the defendant did not challenge Juror C for cause. The judge is entitled to rely on a juror's demeanor and answers to questions in determining bias. *Commonwealth* v. *Gregory*, 401 Mass. 437, 444 (1988).

Next, the defendant challenges Jurors D and E, each of whom had a family member who had been sexually assaulted. While he argues that the jurors did not understand the Commonwealth's burden of proof, the judge questioned each juror to ascertain their potential biases and acted within his discretion in finding these jurors unbiased. *Id.* The defendant did not challenge either for cause.[2]

Finally, Juror F stated that she had been a victim of rape five years earlier, but that she could decide the case fairly. Despite a request from the defendant, the judge declined to ask any further questions after determining that the juror was unbiased. *Commonwealth* v. *Lopes*, *supra* at 736. The defendant exercised one of his peremptory challenges to strike Juror F, and argues that this resulted in a "prejudicial diminution" of his peremptory challenges. This argument is misplaced, as the defendant never articulated at trial that he would have struck a sitting juror had he been allotted additional peremptory challenges, and the judge

---

[2]The defendant argues that he was improperly prevented from exercising a peremptory strike against Juror D. However, because he had had a previous opportunity to strike that juror, and had not done so, and subsequently additional jurors had been seated, Rule 6 of the Rules of the Superior Court (2010) prevented him from going back and later striking that juror. Accordingly, the judge ruled correctly in refusing to allow him to later strike Juror D.

noted that counsel must "make choices" when selecting a jury. The defendant has failed to preserve this issue for review, he has shown no harm, and he has failed to show that the judge abused his discretion in conducting the voir dire.

The defendant argues that the number of biased jurors led to "compromise verdicts." Here, the jury acquitted the defendant of assault with intent to rape and assault and battery by means of a dangerous weapon, while convicting on the charges of kidnaping, rape, and assault and battery. The assault with intent to rape was based on the victim's allegation that the defendant attempted to force her to perform oral sex, and the assault and battery by means of a dangerous weapon was based on her allegation that he forcibly kicked her out of the truck with his construction boot.

While factual inconsistency between verdicts does not prejudice a defendant and, therefore, is not a sufficient reason to set aside a verdict, it is not clear in this case that this verdict was inconsistent at all. See *Commonwealth* v. *Nascimento*, 421 Mass. 677, 684 (1996); *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 584 (1999). There is nothing in the record from which to conclude that the verdict was a result of jury compromise or jury bias; in fact, the acquittals on two indictments indicate an unbiased jury. See *Commonwealth* v. *Lumley*, 367 Mass. 213, 223 (1975) (acquittal on sexual charges, paired with conviction of robbery, indicated impartiality of jury and appropriateness of voir dire); *Commonwealth* v. *Crowder*, 49 Mass. App. Ct. 720, 722 n.3 (2000) (holding that not guilty verdict on indictment charging assault and battery by means of dangerous weapon, paired with conviction on aggravated rape charge, indicated that jury was not biased). Accordingly, we reject the claims of error surrounding jury selection.

3. *Cumulative first complaint testimony.* The defendant argues that the judge committed reversible error in allowing three additional witnesses to testify about the rape of the victim, thereby acting as cumulative first complaint witnesses. We agree that there was error, but hold that the error did not create a substantial risk of a miscarriage of justice.

In 2005, we replaced the doctrine of "fresh complaint" with the doctrine of "first complaint" in cases of sexual assault. *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied,

546 U.S. 1216 (2006).[3] Under the first complaint doctrine, only one complaint witness, generally the first told, is permitted. *Id.* at 243 ("Permitting a single first complaint witness to testify will accomplish the primary goal of the doctrine, which is to refute any false inference that silence is evidence of a lack of credibility on the part of rape complainants"). A complainant, as well as the first complaint witness, may testify as to the details of the complaint itself and why the complaint was made at that particular time. *Id.* at 246. Finally, the designated first complaint witness may testify to "his or her observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false allegation." *Id.*

Accordingly, while the first complaint testimony prohibits the "piling on" of multiple complaint witnesses, *Commonwealth* v. *Murungu*, 450 Mass. 441, 442-443 (2008), it does not exclude testimony that "is otherwise independently admissible" and serves a purpose "other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations." *Commonwealth* v. *Arana*, 453 Mass. 214, 220-221, 229 (2009).

The Commonwealth first presented Officer Doyle as the designated first complaint witness, and the judge gave appropriate limiting instructions in advance of his testimony. Doyle testified that the victim said she had been vaginally raped after an attempted oral rape, and that she had been forcibly kicked out of the defendant's truck. He also testified that he did not recall whether she was sober, but that she had a swollen lip. The defendant concedes that Doyle's testimony was properly admitted.

The defendant argues that the subsequent testimony of the victim's mother, Detective Keeley, and the SANE nurse violated the first complaint doctrine. However, he did not object to any

---

[3]Section 413 of Mass. G. Evid. (2010) reflects the first complaint doctrine set out in *Commonwealth* v. *King*, 445 Mass. 217, 218-219, 241-248, cert. denied, 546 U.S. 1216 (2006) (*King*). The first complaint doctrine has been elaborated in *Commonwealth* v. *Arana*, 453 Mass. 214 (2009); *Commonwealth* v. *Stuckich*, 450 Mass. 449 (2008); *Commonwealth* v. *Murungu*, 450 Mass. 441, 445-448 (2008); and *Commonwealth* v. *Lyons*, 71 Mass. App. Ct. 671 (2008).

of this testimony at trial; therefore, we review his claim of error for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 296 (2002); *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999).

a. *Testimony of mother.* The victim's mother testified that the police telephoned her in the early morning hours of February 27, 1996, and told her that her daughter had been raped. She also testified to her daughter's demeanor and physical condition at the hospital that night. Most importantly, she testified that she and her daughter had a conversation about the assault, although she did not testify as to the substance of the conversation. At no point did defense counsel object to the mother's testimony.

While the mother's testimony regarding the victim's demeanor and physical condition at the hospital is neither inadmissible hearsay nor first complaint evidence, see *Commonwealth* v. *Bianchi*, 435 Mass. 316, 323 (2001) (testimony concerning victim's demeanor and injuries was not hearsay and was properly admitted), admission of the mother's other testimony was error. The mother's conversation with the police was hearsay, and does not fall into any hearsay exception. Testimony showing that the Commonwealth brought its resources to bear on the victim's alleged assault is irrelevant to the defendant's guilt, and creates the imprimatur of official belief in the victim. *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008). Here, the testimony by the victim's mother that the police told her that her daughter had been raped may have indicated to the jury that the police believed the victim's account, and introduction of this evidence was error. The Commonwealth argues that the conversation with the police was admissible for another legitimate purpose, as background information, citing no cases in support. We do not find this argument persuasive.

Likewise, admission of the mother's testimony that she and the victim had a conversation about the assault, even without conveying any details of the conversation, was error. The testimony of multiple witnesses may not be used solely to enhance a victim's credibility, without serving any additional evidentiary purpose. See *Commonwealth* v. *Arana*, *supra* at 229; *Commonwealth* v. *Stuckich*, *supra*. Even where the witness does not relay the details of the conversation with the victim, the fact

that the victim reported the details to the witness "is the equivalent of saying that she repeated her account of the incident, i.e., it allows fresh complaint testimony through the back door," and is error. *Commonwealth* v. *Stuckich, supra* (description of investigative process prohibited by first complaint doctrine).

b. *Testimony of Detective Keeley.* The defendant argues that portions of Keeley's testimony were introduced in error under the first complaint doctrine. On direct examination, Keeley, the investigating detective, testified to having conducted a detailed interview of the victim during which she provided a description of her assailant. Keeley also described the role of the SANE nurse in the investigation and described the rape kit examination. The defendant did not object to this testimony.

The allowance of Keeley's testimony of his interview with the victim — even without substantive details[4] — is error under the first complaint doctrine, and unfairly enhances the victim's credibility. *Commonwealth* v. *King, supra* at 243 ("Evidence that a complainant repeatedly complained of a sexual assault to several different persons in most instances will likely do no more to refute an inference of fabrication than permitting one first complaint witness to testify"). See *Commonwealth* v. *Stuckich, supra.*

The Commonwealth argues that Keeley's description of the role of the SANE nurse was offered for the limited purpose of providing context to the relationship between the SANE nurse and the police and providing a foundation for the admission of physical evidence collected during the SANE examination. Because the portion of Keeley's testimony that the defendant challenges is indeed limited in that way, we agree. While testimony detailing an investigation generally is not allowed unless it is from the first complaint witness or in response to a defense theory, here, the limited testimony served the independent purposes of providing background information and laying a foundation for the admission of physical evidence included in the sexual assault examination kit. See *Commonwealth* v. *Arana, supra* at 226-227; *Commonwealth* v. *Stuckich, supra.* Accordingly, there was no error in this portion of Keeley's testimony.

---

[4]On redirect examination, Keeley did testify to details of his interview with the victim. However, because the defendant asked questions regarding the interview on cross-examination, it was proper for the prosecutor to address the interview on redirect.

c. *Testimony of SANE nurse.* The defendant argues that the SANE nurse's testimony regarding her training, the role of the SANE interviewer, and the content of her interview with the victim was error. The Commonwealth argues that the nurse's testimony is admissible not as first complaint testimony, but as the victim's spontaneous utterances or as statements of identification. There was no objection at trial to the nurse's testimony.

The SANE nurse testified as to her SANE training regarding evidence collection and the role of the SANE interviewer. She also described the physical evidence collected in the victim's sexual assault examination. Most importantly, in response to the prosecutor's question, "What exactly did [the victim] tell you?" she detailed her conversation with the victim. She also described a physician's note describing the victim's facial injuries and described the victim's demeanor while at the hospital.

The nurse interviewed the victim approximately two hours after the reported assault, and described the demeanor of the victim as ranging "from being really angry to not wanting to talk at times." She also described the victim as "upset," "distraught," "tearful," and "labile," which she defined as someone going "from being usually calm and quiet to excited and agitated."

The nurse's testimony of her conversation with the victim was not admissible under the first complaint doctrine. *Commonwealth* v. *King, supra* at 242-243. The first complaint doctrine does not prohibit the admission of additional complaints that are independently admissible, *Commonwealth* v. *Arana, supra* at 220-221; however, the statements at issue here were not admissible under any other hearsay exceptions.

The Commonwealth first argues that the SANE nurse's testimony was admissible as spontaneous utterances[5] made by the victim during the SANE examination.[6] A spontaneous utterance is admissible if the "utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Fuller,* 399 Mass. 678, 682 (1987),

---

[5]We use the terms "spontaneous utterance" and "excited utterance" interchangeably. See Mass. G. Evid. § 803 (2) (2010).

[6]The prosecutor informed the judge and defense counsel during a sidebar conference that he intended to offer the nurse's testimony as an excited utterance. However, the defendant did not object to the SANE nurse's testimony.

quoting *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978). The Commonwealth must show that "there was an exciting event that would give rise to the exception" and that "the declarant displayed a degree of excitement sufficient to conclude that her statement was a spontaneous reaction to the exciting event, rather than the product of reflective thought." *Commonwealth* v. *Santiago*, 437 Mass. 620, 624-625 (2002).

While the victim did experience an exciting event, her examination with the nurse at the hospital did not display the requisite "indicia of reliability" required for a spontaneous utterance. *Commonwealth* v. *Whelton*, 428 Mass. 24, 27 (1998). The SANE nurse's testimony revealed that the victim's description of the assault was developed by a question-and-answer format. While a spontaneous utterance may occur as the result of questioning, the victim's recounting of her allegations to the SANE nurse in this case were not spontaneous utterances, as the requisite level of spontaneity was not present.[7] The victim had earlier recounted her experiences to the desk officer at the police station. She had been transported to the hospital, and was in the process of a three- to five-hour examination by the SANE nurse. While the nurse did testify that the victim's demeanor ranged "from being really angry to not wanting to talk at times," the evidence does not suggest that the victim "displayed a degree of excitement sufficient to conclude that her statement was a spontaneous reaction to the exciting event, rather than the product of reflective thought," *Commonwealth* v. *Santiago*, *supra* at 624, or that the victim's statement to the nurse "was spontaneous to a degree which reasonably negated premeditation or possible fabrication," *Commonwealth* v. *Fuller*, *supra*.

The Commonwealth also argues that the victim's statements

---

[7]The Commonwealth cites three cases where an individual's response to questioning has been deemed to be an excited utterance. See *Commonwealth* v. *Grant*, 418 Mass. 76, 80-82 (1994) (statements at hospital of shooting victim, who had been shot and witnessed murder of her boy friend one hour earlier, were excited utterances); *Commonwealth* v. *Fuller*, 399 Mass. 678, 682-683 & n.8 (1987) (three year old victim's statements in response to mother's questioning minutes after incident were excited utterances); *Commonwealth* v. *Burden*, 15 Mass. App. Ct. 666, 676-677 (1983) (victim's statements in response to neighbor's question, made immediately after victim was stabbed and shortly before victim died, were excited utterances). These cases are each distinguishable from the facts in this case.

to the nurse were admissible as statements of identification. The defendant argues that the testimony is not admissible as a statement of identification, as the identification of the defendant was not a live issue at trial. Defense counsel, during his opening statement, conceded that the defendant did have intercourse with the victim. The defendant's apparent willingness to stipulate that he was the person who had intercourse with the victim at the time and place in question, an essential element of the case, did not preclude the Commonwealth from proving it. *Commonwealth* v. *Rhoades*, 379 Mass. 810, 820 (1980), citing *Commonwealth* v. *Nassar*, 351 Mass. 37, 46 (1966), *S.C.*, 354 Mass. 249 (1968), cert. denied, 393 U.S. 1039 (1969). Because the victim was available to testify as to her prior statements of identification, her statements to the SANE nurse regarding the identification of the defendant were admissible, see *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 432 (2005); Mass. G. Evid. § 801 (d) (1) (C) (2010), but other testimony from the SANE nurse regarding the actions on the night in question were not admissible as statements of identification.

d. *Substantial risk analysis.* Because the defendant did not object to any of the witnesses' testimony at trial, we review the above errors for a substantial risk of a miscarriage of justice. A substantial risk of a miscarriage of justice exists when we "have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). In analyzing a claim under the substantial risk standard, we review the evidence and case as a whole and ask four questions: "(1) Was there error? . . . (2) Was the defendant prejudiced by the error? . . . (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? . . . (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?" *Commonwealth* v. *Randolph*, 438 Mass. 290, 298 (2002). Relief under this standard is seldom granted, and may only be granted where the answer to all four above questions is, "Yes." *Id.* at 297-298.

Here, despite the numerous errors, no substantial risk of a miscarriage of justice was created by the testimony of the detective, the mother, or the SANE nurse. The main issue in this trial

was the credibility of the victim, and the defense capitalized on inconsistencies in her testimony during the cross-examination of the detective and the nurse. In fact, the defendant argues that "the impeachment of the complainant is why the detective, like the mother and the SANE nurse, should have been witnesses in direct examination in the defendant's case-in-chief." During his opening statement, defense counsel asked the jury to "listen to everything that comes out from the testimony and then you will decide who's believable here." Subsequently, during closing argument, defense counsel detailed inconsistencies in the victim's testimony, such as the victim's body position during the rape, the defendant's height and weight as described by the victim, the exact location where he picked her up, and the details of how exactly he pushed her from his truck. In short, the inconsistencies contained in the various versions of the victim's statements were a cornerstone of the defense. Where the inconsistencies contained in the cumulative first complaint testimony were more important to the defense than the Commonwealth, there is no harm to the defendant. See *Commonwealth* v. *Nardi*, 452 Mass. 379, 395-396 (2008) (where testimony erroneously admitted was equally, if not more, important to defense, admission did not create substantial likelihood of miscarriage of justice).

The defense counsel also stated in his closing argument that the victim lied about only having sex with one individual, implying that the victim was a prostitute. He posited that the victim was angry at the defendant for deserting her in the park after their consensual sex, stating that his conduct was not illegal, but, "Maybe it was a misunderstanding of the terms [of their agreement]," which is why she brought an allegation of rape. No evidence was presented at trial that the victim was a prostitute or that she and the defendant had any discussion about sex for a fee; in fact, the victim testified that she was not a prostitute. Defense counsel's implication to the contrary was improper. Counsel may not argue inferences unsupported by the evidence, and the judge should have instructed the jury to disregard the statement. See *Commonwealth* v. *Core*, 370 Mass. 369, 376-377 (1976); *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 56 (1975).

None of the witnesses at issue enhanced the victim's credibility by testifying that they believed the victim's allegations.

The victim's mother did not testify about any details of the assault and did not testify as to her belief in victim's account. The defendant was not prejudiced by the error in allowing the victim's mother's testimony.

Keeley, while testifying that he interviewed the victim and went to the crime scene with her, did not express any indication that he believed the victim. He indicated that he did not find any of the evidence at the crime scene that the victim suggested would be there. Importantly, on cross-examination, defense counsel immediately questioned Keeley about details of the interview, drawing out inconsistencies between the victim's testimony and her statements during the interview. Thus, any error in allowing the testimony of Keeley was overcome by the benefits received in cross-examination, and the error in admitting this testimony did not prejudice the defendant's case.

Similarly, defense counsel utilized cross-examination of the SANE nurse to inquire into details about the rape and to highlight inconsistencies between what the victim told the nurse and her testimony at trial. Cross-examination can cure errors in the admission of statements argued to be excited utterances. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 27 (1998); *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 555-556 (1997).

In the context of the entire trial, it is reasonable to conclude that the errors did not materially influence the verdict. Defense counsel's strategy to highlight inconsistencies in the victim's testimony inured to the defendant's benefit, as evidenced by his acquittal on two of the indictments. For example, the victim's allegation that the defendant forcibly kicked her with construction boots was one of the main areas of inconsistency highlighted numerous times by defense counsel, and was the basis of the indictment charging assault and battery by means of a dangerous weapon. The jury's acquittal on two charges suggests that they had assessed the victim's credibility and were not influenced by any cumulative first complaint testimony.

Finally, we must consider whether defense counsel's failure to object to the testimony could have been a tactical decision. Even if it cannot be said with certainty that defense counsel planned to call the three witnesses as part of the defense, he was certainly prepared to maximize their potential for the defense

in anticipation of the prosecutor's calling them as his witnesses. He cross-examined each witness thoroughly, highlighting any inconsistences between their testimony and the victim's testimony, and emphasized the inconsistencies in closing argument. Accordingly, because the testimony of the witnesses inured to the defendant's benefit, it is reasonable to infer that defense counsel's failure to object was a tactical decision. There was no substantial risk of a miscarriage of justice in this case as a result of the cumulative first complaint testimony.

4. *Duplicative convictions.* The defendant argues that the kidnapping and assault and battery convictions should be dismissed as lesser included offenses of the conviction of rape. We disagree.

In *Commonwealth* v. *Vick*, 454 Mass. 418, 431-432 (2009), we affirmed the traditional elements-based approach to determining whether multiple convictions arising from the same criminal transaction are duplicative, holding that "a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof *of an element* that the other does not" (emphasis added). *Id.* at 431, quoting *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002).

The kidnapping conviction is not duplicative of the rape conviction. *Commonwealth* v. *Wilcox*, 72 Mass. App. Ct. 344, 347-348 (2008). Kidnapping, as charged in this case, is defined by statute: "Whoever, without lawful authority, forcibly or secretly confines or imprisons another person within this commonwealth against [her] will . . . shall be punished . . . ." G. L. c. 265, § 26. Rape, as charged in this case, also is defined by statute: "Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against [her] will, or compels such person to submit by threat of bodily injury, shall be punished . . . ." G. L. c. 265, § 22 (*b*). Each of these crimes requires a separate element: kidnapping requires confinement, which rape does not; and rape requires sexual intercourse, which kidnapping does not. "As long as each offense requires proof of an additional element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative].' " *Commonwealth* v. *Vick, supra,* quoting *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981).

Similarly, the defendant's argument that the force required for an assault and battery was duplicative of the force required for the rape must fail. Assault and battery is defined by statute: "Whoever commits an assault or an assault and battery upon another shall be punished . . . ." G. L. c. 265, § 13A (*a*). Because rape and assault and battery both require force, "[a]ssault and battery is a lesser included offense of rape . . . and . . . is therefore susceptible to being duplicative of a conviction of rape." *Commonwealth* v. *Berrios*, 71 Mass. App. Ct. 750, 753 (2008). In that circumstance, "multiple convictions and sentences are permissible only where each conviction is premised on a distinct criminal act, unless the Legislature has explicitly authorized cumulative punishments." *Commonwealth* v. *Vick*, *supra* at 435.

Here, the assault and battery conviction was based on the defendant's action of slapping the victim in the face, causing a laceration. The force necessary for rape was proved by evidence that he hit the victim a second time after demanding that she remove her pants, causing her to lose consciousness, along with the force required physically to rape the victim. Moreover, the judge instructed the jury that the charge of assault and battery "refers to the claim or allegation that the defendant struck the complaining witness . . . with his hand." Finally, the prosecutor described the assault and battery as referring only to evidence that the defendant struck the victim in the face with his hand. Therefore, the guilty verdict that the jury returned on the indictment charging assault and battery was based on a separate and distinct act from the force required for the jury to return with a guilty verdict on the indictment charging rape. Accordingly, there was no error in the judge's sentencing on the three independent crimes of kidnaping, assault and battery, and rape.

5. *Conclusion.* For the foregoing reasons, the convictions of kidnapping, rape, and assault and battery are affirmed.

*So ordered.*

MARSHALL, C.J. (concurring, with whom Botsford and Gants, JJ., join). I agree that the evidentiary errors regarding the first complaint doctrine did not create a substantial risk of a miscar-

riage of justice in this case. I write separately to question our continuing need for that doctrine.

When we adopted the first complaint doctrine in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*), we sought to address juror tendency to rely on "inaccurate assumptions" and stereotypes about delayed reporting by sexual assault victims, *id.* at 240, while ensuring that the defendant receives a fair trial free from unduly prejudicial "piling on" of witnesses' testifying to the alleged victim's account, *id.* at 245. In my judgment, the experience in the five years since *King* has resulted in confusion and inconsistent evidentiary rulings. Moreover, that experience casts doubt on whether the doctrine is necessary to accomplish its stated objectives. I would reconsider the necessity of the first complaint doctrine and either abandon it or narrowly confine it.

First, since *King* there has been confusion over the application of the first complaint doctrine as to, inter alia, *who* is the first complaint witness and whether another complaint witness can be substituted as the first complaint witness, see *Commonwealth* v. *Murungu*, 450 Mass. 441, 445-446 (2008); whether there can be two "first" complaint witnesses, see *Commonwealth* v. *Kebreau*, 454 Mass. 287, 296 (2009); when evidence regarding the investigative process by police crosses the line into impermissible first complaint evidence, compare *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008), with *Commonwealth* v. *Arana*, 453 Mass. 214, 226-227 (2009); and when evidence of an alleged victim's complaint that is otherwise admissible should nonetheless be excluded due to the concerns of piling on, see *Commonwealth* v. *Arana*, *supra* at 229; *Commonwealth* v. *McGee*, 75 Mass. App. Ct. 499, 503-504 (2009).[1]

As to the necessity of the doctrine, our cases since *King* have

---

[1]Massachusetts is outside the mainstream in allowing the prosecution to admit comprehensive details about the alleged victim's complaint before there has been any attack on his or her credibility. See Annot., Restrictions on Disclosure of Contents of Complaint Alleging Sexual Offense Under Common-Law "Fresh Complaint" Doctrine — Post-1950 Cases, 40 A.L.R.6th 1, 17 (2008) ("Two jurisdictions, Massachusetts and Minnesota, espouse the distinct minority view that all details of the alleged victim's complaint of a sexual offense are admissible" as part of prosecution's case-in-chief). A majority of jurisdictions recognize some version of the "first" or "fresh" complaint doctrine. However, the overwhelming majority allow only the limited *fact* that

demonstrated that, even in the absence of the first complaint doctrine, there are a myriad of ways of admitting potentially powerful evidence that "includes, or implies, the fact that a report was made," *Commonwealth* v. *Arana, supra* at 224, which can counterbalance juror stereotypes. *Id.* at 220-221 (first complaint doctrine does not "prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible"). See, e.g., *Commonwealth* v. *Kebreau, supra* at 297-300 (evidence not admissible under first complaint doctrine otherwise independently admissible). For example, evidence of a complaint may in some circumstances be admissible as a spontaneous utterance. See *King, supra* at 241. Evidence of a complainant's demeanor and physical condition while making a complaint is not hearsay and may be admissible. See *ante* at 846. Admissible evidence concerning a police investigation or medical treatment may inform the jury that the alleged victim had made a complaint. See *ante* at 847-848. If a complainant's credibility is challenged, a prior account of the sexual assault may be admissible as a prior consistent statement to rebut the defendant's accusation of recent contrivance or bias. See, e.g., *Commonwealth* v. *Kebreau, supra* at 298-299; Mass. G. Evid. § 613 (b) (2010). Such evidence may be, and often is, far more effective in establishing the credibility of the alleged victim than first complaint evidence introduced by the Commonwealth.

As to the second concern addressed in *King* — the "piling on" of testimony from witnesses about a complainant's account of a sexual assault — that too may be addressed by evidentiary rules applicable in all cases. If evidence repetitive of the alleged victim's complaint is admissible as, inter alia, a prior consistent statement, an excited utterance, or a hospital record, it is within the trial judge's sound discretion to exclude such evidence. See Mass. G. Evid., *supra* at § 403. For all of these reasons, I conclude that abandonment or confinement of the first complaint doctrine is now warranted.

---

a witness made a complaint to be admitted as part of the prosecution's case-in-chief. The *details* of the complaint are excluded unless the alleged victim's credibility is attacked. See Annot., *supra*. See, e.g., *State* v. *Kendricks*, 891 S.W.2d 597, 602, 603 (Tenn. 1994).