NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1124

COMMONWEALTH

vs.

DYLEN J. TAVARES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury found the defendant guilty of carrying a firearm without a license and possession of ammunition without a firearm identification card. On appeal, the defendant argues that a judge (motion judge) erred by denying his motion to suppress evidence discovered in a shoulder bag the defendant was wearing during a patfrisk, after police stopped a vehicle in which he was a passenger. The defendant also asserts that a different judge (trial judge) erred by denying his motion for attorney-led voir dire of prospective jurors and his counsel's request to pose follow-up questions to a particular juror before she was seated. We affirm.

Discussion. 1. Motion to suppress. The defendant argues that police lacked sufficient justification to pat frisk him and open his shoulder bag. He contends that the motion judge's decision was based on clearly erroneous factual findings relative to the events following the motor vehicle stop.[1] We disagree.

"In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error" (citation omitted). Commonwealth v. Daveiga, 489 Mass. 342, 346 (2022). "A judge's finding is clearly erroneous only where there is no evidence to support it or where the reviewing court is left with the definite and firm conviction that a mistake has been committed" (citation omitted). Commonwealth v. Guardado, 491 Mass. 666, 676 (2023). "We review independently the application of constitutional principles to the facts found" (citation omitted). Daveiga, supra.

The motion judge heard testimony from two police witnesses and viewed video footage (video) from the dashboard camera of a responding officer's police cruiser. We summarize the facts as found by the motion judge, supplemented with "evidence from the record that is uncontroverted and undisputed and where the judge

_____

[1] The defendant does not contest the motor vehicle stop or exit order.

explicitly or implicitly credited the witness's testimony" (citation omitted).  Commonwealth v. Garner, 490 Mass. 90, 94 (2022).

On November 22, 2021, a Fairhaven resident contacted police, identified herself, and reported that a person in a vehicle parked in the driveway next door was brandishing a firearm.  Officer Christopher Bettencourt arrived at the resident's home within five minutes and the resident provided him a description of the vehicle, which was no longer there, and its driver.  While searching the area for the vehicle, Officer Bettencourt spoke with Fairhaven Detective Mark Darmofal.  Detective Darmofal was familiar with the vehicle and knew its driver, Tyler Alexander, from previous police encounters.  Detective Darmofal also knew that Alexander did not have a license to carry firearms.

A short time after speaking with Detective Darmofal, Officer Bettencourt saw the vehicle and stopped it.  Several other police officers arrived almost immediately, including Detective Darmofal.  Alexander was driving the vehicle, and the defendant was in the front passenger seat with a pouch-style bag on his lap.  The bag had a single shoulder strap, which was draped across the defendant's shoulder and chest.  Officer Bettencourt approached the passenger's side of the vehicle,

3

ordering the defendant to "place his hands on the dashboard in front of him."  The defendant appeared nervous.  Instead of putting his hands on the dashboard, the defendant pushed the bag across his lap toward the center console.  He also "called out to Alexander to lock the doors and don't let [the police] in." Detective Darmofal approached the driver's side, removed Alexander, spoke to him briefly, pat frisked him, found nothing, and placed him in a nearby police cruiser without incident. Meanwhile, Officer Bettencourt ordered the defendant out of the vehicle.  When the defendant did not comply, the officer opened the door, unclipped the defendant's seatbelt, and removed him. The defendant then struggled with Officer Bettencourt, turning toward the vehicle to "shield" the bag from the officer and refusing to put his hands on the roof of the vehicle.

Another officer assisted Officer Bettencourt to "subdue" and handcuff the defendant.  Officer Bettencourt then pat frisked the defendant and the exterior of the bag, which was still hanging over the defendant's shoulder.  Officer Bettencourt immediately felt what he recognized as a firearm in the bag.  The bag was opened, and police discovered a loaded firearm inside.[2]

_____

[2] Although the judge found Officer Bettencourt opened the bag, according to the testimony, Officer Bettencourt removed the bag from the defendant but another officer opened it.

a. The motion judge's factual findings. The defendant argues that the video demonstrated that four "critical" factual findings made by the judge were clearly erroneous: (1) the defendant told Alexander to roll up the windows and lock the doors; (2) the defendant refused to put his hands on the dashboard; (3) the defendant attempted to conceal the bag containing the firearm; and (4) the defendant physically struggled with officers when he exited the vehicle. See Commonwealth v. Karen K., 491 Mass. 165, 169 (2023) ("A finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [quotation and citation omitted]). It is evident from our viewing of the video that the police cruiser from which it was recorded was parked some distance away from the driver's side of Alexander's vehicle. See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018) (appellate court may review documentary evidence independently). Although it is true that the defendant cannot be heard on the video telling Alexander to roll up the windows and lock the doors, the sound on the video was muffled at times and the video makes clear that other spoken words were not audible. Also, officers were shouting commands from outside the

5

car at the same time the defendant was speaking to Alexander while they were still inside the car. The video does not offer a clear view of the defendant while he was inside the vehicle and, to the extent it shows him, light reflecting off the windshield obscures the defendant's body and hands. In addition, the camera angle does not permit a clear view of the defendant's body as he was removed from the passenger side of the car, and the defendant's shoulder bag is not visible in the video at all prior to its removal.

In contrast, the police witnesses were within inches of the defendant and Alexander, and thus in a position to see and hear things that the video could not capture. The motion judge was entitled to credit the testimony of the witnesses, see Garner, 490 Mass. at 94, which supported each of the judge's findings. Because each of the motion judge's "critical" factual findings was supported by witness testimony, and not refuted by the video, we conclude that they were not clearly erroneous.

b. The patfrisk. To justify a patfrisk, "police must have a reasonable suspicion, based on specific articulable facts, that the suspect is armed and dangerous." Commonwealth v. Torres-Pagan, 484 Mass. 34, 38-39 (2020). "We examine the facts not in isolation, but as they reasonably and objectively appeared in the context of the ongoing encounter." Commonwealth

v. Rosado, 84 Mass. App. Ct. 208, 212 (2013).  Our inquiry into a suspect's dangerousness is fact-specific, and we consider the totality of the circumstances.  See Commonwealth v. Crowder, 495 Mass. 552, 566 (2025).

Here, police had reliable information that Alexander possessed a firearm in the vehicle without a firearm license.  However, a patfrisk of Alexander and brief scan inside the vehicle did not reveal the firearm.  At the same time, the defendant's behavior -- telling Alexander not to lower the windows and to lock the door and moving his bag away from the officers in an apparent effort to conceal it -- provided reasonable suspicion that he possessed the firearm (i.e., that he was "armed").  Reasonable suspicion that the defendant was armed, in combination with his (1) refusal to obey orders to put his hands on the dashboard, unbuckle his seat belt, and exit the vehicle; (2) physically struggling with officers as they removed him; and (3) twisting his body so that the pouch-style bag faced away from Officer Bettencourt provided reasonable suspicion that the defendant was "dangerous."  See Crowder, 495 Mass. at 565-569 (following lawful exit order, fact that defendant turned portion of his body containing jacket pocket away from officer and pressed that pocket against his body was relevant to determination that he was sufficiently dangerous to justify

7

patfrisk).  See also Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 747-748 (2021) (passenger's erratic movements outside car to distract police from interior of car relevant to dangerousness inquiry).  We thus discern no error in the motion judge's conclusion that the patfrisk of the defendant and the bag he was wearing was justified.

We are not persuaded by the defendant's contention that, even if the patfrisk was justified, there was no justification to open the shoulder bag.  Under the circumstances, once Officer Bettencourt felt what he recognized to be a firearm, police were authorized to seize and secure it.  See Commonwealth v. Wilson, 441 Mass. 390, 397 (2004) ("plain feel" doctrine authorizes seizure when contraband nature of item is immediately apparent).

2.  Jury selection.  The defendant argues that the trial judge committed prejudicial errors by denying the defendant's motions for attorney-led voir dire and refusing follow-up questions of a juror.  We disagree.

a.  Attorney-led voir dire.  Under District Court Standing Order 1-18 (2018) (standing order), a trial judge "shall allow" attorney-led voir dire, if it is properly requested in advance.  A violation of this standing order is error.  See Commonwealth v. Leonard, 103 Mass. App. Ct. 635, 637 (2023).  However, the standing order is an internal mechanism for the court to empanel

8

a fair and impartial jury, and not a constitutional imperative, thus this error only warrants relief if it prejudiced the defendant's case.  Id. at 638.

Here, the defendant filed a motion for attorney-led voir dire over a month before trial.  When the trial was rescheduled, the defendant renewed his motion, this time adding questions he would like the judge to ask.  Because both motions complied with the requirements of the standing order, the trial judge should have allowed them.  Nevertheless, the trial judge did ask the entire venire the three questions requested by the defendant, which related to jurors' potential biases regarding firearms offenses, along with standard questions about juror bias.  No juror gave an affirmative response to any of the defendant's proposed questions.  On this record, we conclude that the voir dire procedure was sufficient to accomplish the objective of the standing order to empanel a fair and impartial jury.  We thus discern no prejudice from the trial judge's denial of the defendant's request for attorney-led voir dire.  Leonard, 103 Mass. App. Ct. at 639 (no prejudice where judge covered all topics defendant wanted to explore).

b.  Juror twenty-two. During jury selection, the trial judge questioned juror number twenty-two individually about a statement on her questionnaire that she had no tolerance for

"child molesters, drunk drivers or drug dealers."  Juror twenty-two had already stated that she was aware of nothing that would prevent her from being a fair and impartial juror.  The defendant requested that the juror be asked if she associated firearms with drug dealers.  The trial judge declined to ask this specific question; however, he had earlier asked whether "anything about [her] thoughts and beliefs about those type of cases that would spill into this case or make it difficult for [her] to be fair and impartial as a juror in this case?"  The juror responded, "No."  This question adequately explored the defendant's concern regarding juror twenty-two's potential bias in firearms cases and the connection between drugs and firearms.  See Leonard, 103 Mass. App. Ct. at 639.  Moreover, the defendant did not challenge juror twenty-two for cause and stated he was content with the jury after the last juror was seated.  Compare, e.g., Commonwealth v. McCoy, 456 Mass. 838, 842  (2010) ("Where a defendant fails to challenge a juror for cause, the questions

of the impartiality of that juror and the adequacy of voir dire are waived").

Judgments affirmed.

By the Court (Rubin,
   Brennan & Wood, JJ.[3]),

Clerk

Entered: February 6, 2026.

---

[3] The panelists are listed in order of seniority.