Commonwealth *vs.* Pepukai Murungu.[1]

Middlesex. November 5, 2007. - January 16, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Rape. Evidence,* Fresh complaint, First complaint, Judicial discretion.

This court endorsed two new exceptions to the "first complaint" doctrine established in *Commonwealth* v. *King,* 445 Mass. 217 (2005), that allow a judge in a case involving sexual assault to substitute the second person whom a victim tells about the assault (absent compelling circumstances justifying further substitution) as the first complaint witness, in circumstances where the first encounter that the victim has with another person does not constitute a complaint (in that the victim does not actually state that she has been sexually assaulted), or where the first person to whom the victim complains has an obvious bias or motive to minimize or distort the complaint; the court further established that such a preliminary determination by a trial judge is reviewable for abuse of discretion, and, if the determination is dependent on findings of fact, the findings necessary to that determination are to be upheld unless clearly erroneous. [445-447]

At a jury-waived rape trial, the judge acted within his discretion in ruling that a witness to whom the victim first spoke about the assault, the defendant's sister, qualified as the first complaint witness and then, after hearing her trial testimony, which clearly appeared biased in favor of the defendant, concluding that the victim's mother should be the substituted first complaint witness [447], although the judge committed nonprejudicial error in failing to strike the defendant's sister's testimony once he permitted the victim's mother to testify as the first complaint witness [447-448].

Complaint received and sworn to in the Middlesex County Division of the Juvenile Court Department on November 26, 2002.

Indictments found and returned in the Superior Court Department on December 12, 2003.

Following joinder of the delinquency complaint and youthful offender indictments on November 7, 2005, the case was heard in the Juvenile Court by *Jay D. Blitzman,* J.

[1]Although customarily we spell the defendant's name as it appears on the indictments, "Murungau," we use the spelling that appears in the Juvenile Court complaint.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John T. Ouderkirk, Jr.,* for the defendant.

*Kimberly A. Rugo,* Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Donna E. Levin,* Special Assistant Attorney General, *& Peggy A. Wiesenberg* for Department of Public Health.

*Hank L. Goldsmith, Linda I.T. Zabriskie, & John H. Snyder,* of New York, *& Gregory J. Sieczkiewicz, Kathryn M. Reardon, & Lindy Aldrich* for The Victim Rights Law Center & others.

COWIN, J. In *Commonwealth* v. *King,* 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), we modified our "fresh complaint" doctrine to one of "first complaint." We, and many other courts in the United States, had adopted the fresh complaint doctrine because of the belief that failure of a rape victim to make a prompt complaint of a sexual assault was similar to an inconsistent statement that contrasted with the complainant's trial testimony about the rape. *Id.* at 229, citing *Commonwealth* v. *Lavalley,* 410 Mass. 641, 646-647 n.7 (1991). Consequently, this fresh complaint doctrine permitted the prosecution "to rebut any inference that the sexual assault charge was fabricated [by presenting] evidence from 'fresh complaint' witnesses [establishing] that the complainant did in fact complain and the complaint was 'fresh' or prompt." *Commonwealth* v. *King, supra* at 229.

In 2005, we concluded in *Commonwealth* v. *King, supra* at 241-242, that "some elements of our 'fresh complaint' doctrine [did] not adequately reflect current knowledge about victims' reactions to sexual assault" and were not serving the original purposes of the doctrine. We thus developed the "first complaint" doctrine so that one complaint witness, "the person who was first told of the assault, [could] . . . testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief." *Id.* at 243. In place of admitting testimony from multiple complaint witnesses in sexual assault cases (a practice known as "piling on"), we "limit[ed] the

testimony to that of one witness — the first person told of the assault." But we provided judges discretion "[i]n limited circumstances . . . [to] permit the testimony of a complaint witness other than, and in lieu of, the very 'first' complaint witness." *Id.* We must determine whether the judge in this case acted within his discretion in allowing a witness other than the very first person to whom the victim spoke about the assault to testify as a substitute first complaint witness.

*Background.* The defendant, Pepukai Murungu, a sixteen year old young woman,[2] was charged originally in the Juvenile Court with five counts of rape of a child by force (two as a principal and three as a joint venturer) and one count of intimidation of a witness. She was later indicted as a youthful offender, see G. L. c. 119, § 54,[3] on the rape charges, but remained charged as a juvenile on the intimidation charge. The allegations were that the thirteen year old victim was sexually assaulted by both the defendant and the defendant's boy friend.

After a jury-waived trial, the judge found the defendant a youthful offender on the lesser included offense of statutory rape, see *Commonwealth* v. *Thayer*, 418 Mass. 130, 132 (1994), on the two indictments charging her as a principal. He acquitted her of the youthful offender indictments charging her as a joint venturer and found her delinquent on the intimidation charge.[4]

*Trial.* Without describing the sordid details, the judge could have found the following facts. The victim was staying overnight at the home of her best friend, Simu Murungu, the sister of the defendant,[5] when the defendant gave her several shots of rum. The defendant and her twenty-six year old boy friend took the

---

[2]We state the ages of all those involved as of the time of the incident.

[3]The youthful offender statute, G. L. c. 119, § 54, permits prosecutors to proceed by indictment if the following statutory requirements are present: (1) the alleged offense was committed while the individual was between the ages of fourteen and seventeen years; (2) if he were an adult, the offense would be punishable by imprisonment in the State prison (i.e., a felony); and (3) the individual was previously committed to the department of youth services *or* the alleged offense involved certain enumerated firearms violations, *or* it involved "the infliction or threat of serious bodily harm." See *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 862 (2001).

[4]The intimidation charge is not at issue in this appeal.

[5]We refer to Simu Murungu by her first name to distinguish her from the defendant.

victim to the boy friend's apartment where the defendant and the boy friend raped the victim.[6]

The following morning, when the victim and Simu walked to the school bus stop, Simu was angry because she believed the victim had been partying all night with her sister and without her. The victim began crying, showed Simu marks on her neck and said she was "scared" and "didn't know what to do." Simu then telephoned the defendant. After school, the victim returned to Simu's house because she "had nowhere else to go." The victim's mother brought the victim home from Simu's that afternoon and left to go grocery shopping. The victim telephoned Simu in tears, crying, asking what she should do, if she should tell anyone what happened, and whom she should tell. The victim did not believe that she used the word "rape" in her conversations with Simu, but Simu's responses led her to believe that Simu knew what had happened. The victim did not detail the defendant's participation in the rapes to Simu because the defendant was Simu's sister and the victim did not want to hurt Simu or impair their friendship. After speaking to Simu, the victim, crying, called her mother, asked her to return home, and related the details of the incident to her mother.

As described above, the first person to whom the victim spoke about the assault was the sister of the defendant, Simu. At the start of trial, the Commonwealth filed a motion in limine seeking to call the victim's mother as a substitute first complaint witness in place of Simu. The judge conducted a voir dire, at which Simu claimed that the victim was upset because her mother would see the "hickeys" on her neck. Simu testified also that the victim said that the defendant "was there," but denied that anything more was mentioned about the defendant. The judge did not decide the Commonwealth's motion, but took it under advisement. At trial, as mentioned, the victim testified to her statements to Simu. The defendant cross-examined the victim, suggesting that her implication of the defendant was a recent fabrication.

The judge then made his ruling and denied the Com-

---

[6]The boy friend was tried separately in Superior Court and convicted of two counts of rape of a child by force, two counts of statutory rape, and two counts of indecent assault and battery on a child under the age of fourteen.

monwealth's motion in limine, ruling that Simu, not the mother, was the first complaint witness.[7] As the trial proceeded, the Commonwealth continued to press the first complaint issue, but in accord with the judge's ruling, Simu testified as the first complaint witness. Simu stated that the victim had only "slightly" discussed the incident with her, suggesting that the victim's primary concern was that her mother would see the marks on her neck. Simu stated that the victim did not tell her she had been raped, and (inconsistently with her voir dire testimony) did not mention that the defendant "was there" until a conversation a few days later.

After hearing Simu's testimony, the judge reversed his ruling. Explaining that Simu's testimony demonstrated that she did not qualify as a complaint witness, he allowed the mother to testify as a substitute first complaint witness. The judge theorized that if he precluded the Commonwealth from calling the mother as a complaint witness, the Commonwealth would effectively be prevented from presenting any complaint witness at all. The defendant objected to the entirety of the mother's complaint testimony.

*Discussion.* We stated in the *King* case that in certain circumstances a judge, in his discretion, could permit someone other than and "in lieu of, the very 'first' complaint witness" to testify, *Commonwealth* v. *King*, 445 Mass. 217, 243 (2005), and we provided some specific examples of when such substitutions could occur. For example, "where the first person told of the alleged assault is unavailable, incompetent, or too young to testify meaningfully, the judge may exercise discretion in allowing one other complaint witness to testify." *Id.* at 243-244. Thus, we left open the possibility that, on unusual occasions, the first person the victim informs of the incident may not be required to be the first complaint witness. We did not attempt to set forth an exhaustive list of appropriate substitutions. Other exceptions are permissible based on the purpose and limitations of the first complaint doctrine.

The present case provides us an opportunity to detail two

---

[7]Due to an apparent failure of recording equipment, there are numerous references to "inaudible" and "phonetic" during bench conferences in which critical rulings were made.

such additional exceptions. The first is when the encounter that
the victim has with the first person does not constitute a com-
plaint, when, for example, the victim expresses to that person un-
happiness, upset or other such feelings, but does not actually state
that she has been sexually assaulted. The second is when there is
such a complaint, but the listener has an obvious bias or motive
to minimize or distort the victim's remarks.

We endorse these exceptions because they are consistent with
the purposes of the first complaint doctrine as enunciated in the
*King* case. The exceptions permit the Commonwealth to rebut
any suggestion that the victim's silence was indicative of fabri-
cation, while still avoiding the "piling on" of complaint wit-
nesses. *Id.* at 243-245. On the other hand, always requiring the
Commonwealth to proceed with the first complaint witness re-
gardless of the content of the conversation or the motivation of
the witness may undermine the purpose for which the hearsay is
permitted. Testimony of a vague conversation that does not
"complain" that a sexual assault occurred or testimony by a
hostile first complaint witness may communicate to the jury that
the victim in fact did not complain at all and that, if she had in-
deed been assaulted, she would have complained with more force
and in greater detail.

By permitting these exceptions to the first complaint doctrine,
we do not suggest a relaxation of that doctrine so that the Com-
monwealth may pick and choose among various complaint wit-
nesses to locate the one with the most complete memory, the
one to whom the complainant related the most details, or the
one who is likely to be the most effective witness. We conclude
only that a judge, in situations such as we have described, may
substitute a later complaint witness as the first complaint wit-
ness. The substituted witness should in most cases be the next
complaint witness, absent compelling circumstances justifying
further substitution.

The decisions that must be made in these situations will obvi-
ously require preliminary determinations by the trial judge.
Generally, a voir dire will be the appropriate mechanism for
such a determination, see *Commonwealth* v. *Stuckich, post* 449,
455 (2008), and the standard of review of that determination is
an abuse of discretion. If the decision is dependent on findings

of fact, such as in the case of bias on the part of the witness, the judge should make the necessary findings which will be upheld unless clearly erroneous.

Although we limit the Commonwealth to one first complaint witness, the defendant is not so bound. If, in an effort to establish that the first complaint was misleading, inaccurate or false, the defendant desires to show that the first person to whom the complainant made a complaint was in fact someone other than the proffered first complaint witness, or that the complainant did not complain at the time, to the person, or in the detail one would expect, it is not our intention to preclude such evidence on the part of the defendant.

The judge here acted within his discretion first in ruling that Simu qualified as the first complaint witness and then, after hearing Simu's trial testimony, concluding that the mother should be the substituted first complaint witness. Assuming that the "hickeys" the victim showed to Simu constituted marks of an unwanted sexual assault, the judge was warranted at first in determining that Simu was "the person who was first told of the assault." *Commonwealth* v. *King, supra* at 243. On this evidence, the judge could permissibly have decided that the marks were not conferred with the consent of the victim because of her anguish in displaying them. Later, when Simu testified at trial and omitted the detail of the defendant's presence at the incident (to which she had testified at voir dire), the judge also acted within his discretion in determining that the mother should be substituted. Simu's trial testimony clearly appeared biased in favor of the defendant.[8]

Contrary to *Commonwealth* v. *King, supra,* two complaint witnesses were permitted to testify. This was error. Once he permitted the mother to testify as the first complaint witness, the judge should have struck Simu's testimony.[9,10] The defend-

---

[8]The judge did not make these specific findings, although we can infer from the record that he applied the considerations that we have set forth herein.

[9]Had Simu's testimony been admissible as the first complaint, it is only her first conversation with the victim that would have been admissible as such.

[10]Because this was a jury-waived trial, we assume that, once the judge allowed the mother to testify as the first complaint witness, he disregarded Simu's testimony.

ant objected to the mother's testimony as a first complaint witness. Thus, we review for prejudicial error. See *Commonwealth v. Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth v. Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983) ("An error is nonprejudicial only 'if . . . the conviction is sure that the error did not influence the jury, or had but very slight effect' "). Here, the error was not prejudicial. In a jury-waived trial, we presume that the judge was not affected, as a jury might be, by the testimony of two complaint witnesses.[11] The judge indicated on the record his familiarity with the new first complaint doctrine and its purpose as defined in the *King* case. In addition, there was no "piling on" of complaint witnesses, one of our concerns in the *King* case, and Simu's testimony was so lacking in detail as to be virtually insignificant.

*Judgments affirmed.*

---

[11]Even had the mother been the first complaint witness, the defendant could have introduced Simu's testimony to impeach the mother. See *supra.*