Following a jury-waived trial, the defendant was convicted of two counts of armed assault with intent to murder ( G. L. c. 265, § 18 [b ] ), two counts of assault by means of a dangerous weapon ( G. L. c. 265, § 15B [b ] ), one count of unlawfully carrying a firearm ( G. L. c. 269, § 10 [a ] ), and one count of unlawful possession of a loaded firearm ( G. L. c. 269, § 10 [n ] ).[2] His motion for a new trial was denied. On appeal, the defendant challenges (1) the sufficiency of the evidence that he possessed a "firearm" within the meaning of G. L. c. 140, § 121, (2) the failure of the trial judge to redact portions of a recording of a 911 call during which the anonymous caller stated that others in the neighborhood were afraid to call the police, and (3) the admission of statements, elicited by trial counsel on cross-examination, that the witness knew what the defendant was "involved with." We affirm.
Background. Viewing the evidence in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), the trial judge could have found the following facts. In August, 2014, Kennie Mota Cruz (Kennie); his brother, Christian Mota Cruz (Christian);[3] Kennie's girl friend, Deborah Diaz; and Christian's girl friend, Janiya Adams Ingram, went to a cellular telephone store in Worcester, seeking to repair Ingram's telephone screen. At the store, the group encountered three men-the defendant, Jonathan Beeman, and a third man-with whom they were already familiar. During the encounter, Kennie heard one of the three men make a derogatory comment, and became enraged. A verbal altercation followed, during which the defendant held his waistband, revealing a silver gun, and warned Kennie, "You don't want it. You don't want it."
Eventually, Kennie left the store along with Christian, Diaz, and Ingram. Kennie picked up a stick with nails in it as the group walked down McKinley Road. The defendant drove an SUV past the group. Beeman and the third man were also in the vehicle. After passing, the defendant turned the SUV around at the top of the street, paused for a moment, and drove back towards the group. The driver's side window was rolled down, and the defendant held a silver revolver, which was approximately six inches in length. The defendant aimed the gun at Kennie and Christian, exclaimed "[b]itch-ass nigga," and fired. Members of the group heard a loud sound they later described as a gunshot. Kennie saw smoke emitting from the gun's barrel. The group ducked to the ground. No one was injured, and no cartridge casings were recovered from the scene; an officer testified that this was consistent with the fact that a revolver does not eject spent casings. A witness, who lived near the scene of the incident and was familiar with the sound of gunshots, confirmed that she heard a gunshot.
Two days after the shooting, a Worcester police detective recognized the defendant as matching the description of the perpetrator of the shooting. When the detective asked the defendant his name, he responded falsely that he was "Luis Castro." When the detective asked to speak with him further, the defendant fled but eventually was arrested.
1. Sufficiency of the evidence of a firearm. Under G. L. c. 140, § 121, a "firearm" is (i) a weapon, (ii) capable of discharging a shot or bullet, and (iii) equipped with a barrel less than sixteen inches long. See Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 2 (1997). The Commonwealth's burden in proving that a weapon is a firearm "is not a heavy one." Ibid. To meet its burden, the Commonwealth may rely on witness testimony, even where "there was no gun found, no casings or bullets recovered, no ballistics evidence, and no expert testimony." Commonwealth v. Housewright, 470 Mass. 665, 680 (2015).
Here, the evidence was sufficient to establish that the defendant possessed a loaded, six-inch-long silver revolver that, when the defendant fired it, emitted both smoke and a loud sound identified as a gunshot by several witnesses, including one who specifically testified that she was familiar with the sound of gunshots. See ibid. (evidence that defendant "loaded and then fired a weapon that looked like a gun, sounded like a gun, and flashed like a gun" was sufficient to establish carrying of "firearm" even where weapon was not introduced at trial). The defendant also threatened Kennie with the revolver by displaying it at his waistband during their confrontation and stating, "You don't want it. You don't want it." He then drove past Kennie following the argument, turned around, rolled down his window, and shot in the direction of Kennie and Christian. See Commonwealth v. Tuitt, 393 Mass. 801, 810 (1985) (assessment of sufficiency of "firearm" evidence included testimony that defendant threatened victim with gun, stating, "[d]on't get killed over anybody else's money"). Together, this evidence was sufficient to warrant the trial judge's conclusion that the defendant's weapon was capable of discharging a bullet and thus constituted a firearm under G. L. c. 140, § 121.
2. 911 call. At trial, the sole basis that trial counsel provided for excluding the 911 call was a lack of reliability. On appeal, the defendant raises a new argument-namely, that portions of the recording should have been redacted, sua sponte by the trial judge, to exclude statements by the caller that others in the area feared calling the police. Because no such request or objection was raised by trial counsel, the defendant and Commonwealth agree that our review is limited to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Dargon, 457 Mass. 387, 397 (2010).
Here, assuming arguendo that there was an error, there was no such risk. In a jury-waived trial, we presume that the judge was not unduly swayed by the introduction of improper evidence, especially where (as here) the supposed improper evidence was insignificant in the context of the trial as a whole. See Commonwealth v. Murungu, 450 Mass. 441, 448 (2008).
3. Testimony referencing prior bad acts. The defendant maintains that during cross-examination, trial counsel elicited from Kennie evidence concerning prior bad acts of the defendant. Specifically, Kennie testified that he did not associate with the defendant in school because he knew what the defendant was "involved with" and that he grabbed a stick (after the verbal altercation in the store) because of this involvement. No objection was raised at trial, so our review is to determine whether any error raised a substantial risk of a miscarriage of justice. Commonwealth v. Sholley, 432 Mass. 721, 732 (2000).
To begin, it is not clear that Kennie's testimony concerned prior bad acts by the defendant. His reference to the defendant's prior involvement was vague and obscure. Assuming arguendo that this was prior bad act evidence, its admission did not result in a substantial risk of a miscarriage of justice. As with the 911 call, we assume that the trial judge considered this evidence only for its proper purpose. See Murungu, 450 Mass. at 448. Further, any possibility that the judge was improperly influenced was exceedingly unlikely due to the ambiguous nature of the testimony.
Judgments affirmed.
Order denying motion for new trial affirmed.

Prior to trial, the Commonwealth agreed to the dismissal, as duplicative, of one count of armed assault with intent to murder. Following the trial, the Commonwealth agreed to the dismissal of one count of unlawful possession of ammunition as duplicative. The trial judge acquitted the defendant of two counts of armed assault with intent to murder and two counts of assault by means of a dangerous weapon.

Because they share the same surname, we will refer to the brothers by their first names.