NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-33                                              Appeals Court

COMMONWEALTH  vs.  FELIPE GONZALEZ, SR.

No. 21-P-33.

Bristol.     February 2, 2023. – August 9, 2023.

Present:  Englander, Grant, & Brennan, JJ.


Rape.  Child Abuse.  Constitutional Law, Confrontation of
    witnesses.  Evidence, First complaint, Authentication.
    Practice, Criminal, Confrontation of witnesses, Argument by
    prosecutor.



Indictments found and returned in the Superior Court
Department on September 15, 2016; March 2, 2017; and October 11,
2017.

The cases were tried before Sharon E. Donatelle, J.


Jennifer M. Petersen for the defendant.
Robert P. Kidd, Assistant District Attorney, for the
Commonwealth.


BRENNAN, J.  After a jury trial in Superior Court, the

defendant was convicted of nine counts of rape of a child

aggravated by age difference (G. L. c. 265, § 23A), one count of

rape of a child by force (G. L. c. 265, § 22A), one count of

assault with intent to rape a child (G. L. c. 265, § 24B), one count of assault and battery (G. L. c. 265, § 13A), six counts of indecent assault and battery on a child under fourteen (G. L. c. 265, § 13B), and one count of witness intimidation (G. L. c. 268, § 13B), all related to the repeated and prolonged sexual abuse of the victim. Concluding that (1) the judge acted within her discretion in permitting a substitution of the first complaint witness, (2) the judge properly admitted as first complaint evidence screenshot images (screenshots) of the victim's conversation over a social media application, (3) the victim's statements about having "told" her mother did not amount to subsequent complaints, (4) the defendant's statements to the victim were properly admitted in evidence, and (5) there was no risk of a miscarriage of justice based on the prosecutor's closing argument, we affirm.

Background. In October 2011, when the victim was approximately eight years old, she came to the United States from Guatemala to live in Avon with her mother and her mother's husband, the defendant. About six months later, the defendant sexually assaulted the victim for the first time. This was the beginning of a long pattern of sexual abuse that continued after the family moved to North Attleboro when the victim was approximately ten years old, and to Raynham when she was twelve. The victim testified that the defendant routinely raped her --

as often as "every other day" -- and occasionally forced her to perform other sexual acts by threatening to rape her if she did not. The victim did not tell her mother about the sexual assaults because the defendant threatened to rape her younger sister and to hurt her mother if she reported the assaults.

When the victim was thirteen years old, in August 2016, she disclosed the sexual assaults to her male cousin who lived in Guatemala. The victim began to tell her cousin over the telephone that she had been raped, but when the defendant arrived home, the victim moved their conversation to a social media application, Facebook messenger. A portion of their messages, which was admitted in evidence translated from Spanish, was as follows:

> Cousin: "Who did it?"
> Victim: "I am not going to tell you[.] Because I know you are going to get angry[.]"
> Cousin: "Was it Felipe? Or tell me who it was[.] You must . . . tell me[.]"
> Victim: "It was him[.] But you cannot do anything[.] Ok[.] I am telling you because I trust you[.] When I was eight years old[.] Do the math now I am 13 and (he) still tries to do it[.]
> "(He) walks into my bedroom and [t]ells me things[.] Yes, I am sure[.]
> "I know what it means to do something by force [a]nd what it means to do something out of your own will[.] . . .
> "Do not tell anyone ok . . . [?] Can you promise me that?"

Although the chain of events is not entirely clear from the record, it seems that the victim's cousin passed screenshots of

their conversation to the victim's godmother, and she in turn sent them to the victim's father, who resided in Connecticut.

Shortly after learning of the abuse allegations, on August 17, 2016, the victim's father drove to the home in Raynham where the victim lived with her mother and the defendant. After the father arrived, he informed the victim's mother of the abuse allegations and then the mother placed a video telephone call to the defendant, who was at work. The father testified that, during that conversation, the defendant spoke to the victim and told her, in Spanish, something to the effect of the following: "whether I did this or I did not do this, I'm going to get in trouble." The victim testified that the defendant asked her "if [she] was sure that [she] wanted to say that, and whether he did it or he didn't do it, that it was going to cause a lot of problems."

Discussion. 1. Substitution of the first complaint witness. The defendant argues that the trial judge abused her discretion by permitting the Commonwealth to introduce the victim's communications with her cousin as her first complaint where the victim previously disclosed the sexual abuse to a relative of the defendant who did not remember the disclosure. We disagree.

Where the first complaint witness "has an obvious bias or motive to minimize or distort the victim's remarks," it is

within the judge's discretion to allow the next available complaint witness to testify. Commonwealth v. Murungu, 450 Mass. 441, 446 (2008). "[T]he standard of review of that determination is an abuse of discretion. If the decision is dependent on findings of fact, such as in the case of bias on the part of the witness, the judge should make the necessary findings which will be upheld unless clearly erroneous." Id. at 446-447.

Until shortly before trial, prosecutors understood that the victim's disclosure to her cousin was her first complaint. Then, on the eve of trial, prosecutors learned from the victim that, when she was ten years old, she told a then nine year old girl -- who was a relative of the defendant -- about the abuse. After the girl's father told police that his daughter had no memory of the victim's disclosure, the Commonwealth moved, in limine, to introduce as substitute first complaint evidence the victim's Facebook messages to her cousin in Guatemala. The judge conducted a voir dire of the girl (the defendant's relative), who testified that she had no memory of the victim telling her that the defendant had done something to her sexually. She also testified that she calls the defendant her "uncle"; that her father speaks with the defendant every one to two weeks; and that, despite being relatively close before the defendant was charged, she and the victim had not been in

contact since then.  We are satisfied that the judge's conclusions that the defendant's relative was biased in favor of the defendant and had motive to minimize her recollection of the victim's disclosure were amply supported.  See Murungu, 450 Mass. at 446.  Further, the defendant's relative had no memory of any disclosure by the victim.[1]  See Commonwealth v. Holt, 77 Mass. App. Ct. 716, 722 n.5 (2010) (no error to allow substitute first complaint witness where initial first complaint witness had no recollection of any complaint).  We discern no abuse of discretion in the judge's decision to permit a substitution of the victim's complaint to the next person she told.

  2.  Admission of screenshots as first complaint evidence. The defendant next challenges the judge's decision to admit the first complaint evidence through screenshots of the victim's Facebook messages with her cousin in Guatemala.  "Once a judge has carefully and thoroughly analyzed [the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence], and has decided that proposed first complaint evidence is admissible, an appellate court shall

_____

  [1] Called by the defendant at trial, that relative testified that the victim never disclosed anything about being abused by the defendant.

review that determination under an abuse of discretion standard." Commonwealth v. Aviles, 461 Mass. 60, 73 (2011).

a. Authentication. At trial, the judge ruled that the screenshots of the victim's conversation with her cousin were properly authenticated by the victim's testimony. The defendant now claims proper authentication requires testimony from more than one participant in a conversation. We discern no support for this remarkable proposition in any applicable case law. In fact, it is well settled that Facebook messages may properly be authenticated by circumstantial evidence alone, without live testimony from any participant. See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 310-315 (2019), citing Commonwealth v. Purdy, 459 Mass. 442 (2011). See also Mass. G. Evid. § 901(b)(1), (11) (2023). Here, the victim testified as to when and how the conversation took place, and she verified that the screenshots and translation of the conversation were accurate. We therefore are satisfied that the evidence was sufficiently authenticated. See Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 366-367 (2014) (preponderance of evidence standard for authentication of electronic communications).

b. Confrontation clause. The defendant also asserts that the admission of screenshots of the victim's first complaint without live testimony from the recipient of the complaint deprived him of his right to confront adverse witnesses, as

guaranteed by the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. We disagree. Confrontation clause issues "do not arise when the evidence is not offered for the truth of the matter asserted and therefore is not hearsay under traditional rules of evidence." Commonwealth v. Caillot, 454 Mass. 245, 255 (2009), cert. denied, 559 U.S. 948 (2010), citing Tennessee v. Street, 471 U.S. 409, 413-414 (1985). See Crawford v. Washington, 541 U.S. 36, 51, 59 n.9 (2004). Here, the Facebook messages themselves were the first complaint, admissible not for their truth, but to corroborate the victim's account of the assault. See Commonwealth v. Stuckich, 450 Mass. 449, 456 (2008) ("If, in fact, the letter was the first complaint, that is the end of the matter. The letter would be the first complaint evidence"); Commonwealth v. King, 445 Mass. 217, 219 (2005), cert. denied, 546 U.S. 1216 (2006) ("First complaint testimony may be admitted for a limited purpose only, to assist the jury in determining whether to credit the complainant's testimony about the alleged sexual assault. The testimony may not be used to prove the truth of the allegations"); Commonwealth v. Alce, 96 Mass. App. Ct. 851, 854 n.6 (2020) ("Significantly, because under the first complaint doctrine, the alleged victim's out-of-court statement is not offered for its truth, it is not hearsay and the confrontation clause is not implicated" [quotation and citation

omitted]).  See also Commonwealth v. Revells, 78 Mass. App. Ct. 492, 496 (2010) (first complaint was both victim's verbal statements to her mother and letter she wrote in "tightly intertwined oral and written communication").  The jury were properly instructed that they could not consider the screenshots "as evidence that the assault in fact occurred."[2]

3.  Victim's testimony about having "told" her mother.  During direct examination, the victim testified that the defendant last raped her "a few nights before I told my mother about what he was doing" and she last saw the defendant "[t]he day that I told my mom."  The defendant claims that these references to the victim's having "told" her mother were prejudicial error because they were "essentially the same as permitting those other witnesses to testify" as additional complaint witnesses, even where "the details of her

---

[2] We also reject the defendant's contention that allowing the victim to authenticate the screenshots improperly allowed her to bolster her own credibility.  Complainants are specifically permitted to "testify to the details of the first complaint (i.e., what she told the first complaint witness), as well as why the complaint was made at that particular time," for the stated purpose of demonstrating that their allegations are credible.  King, 445 Mass. at 219.  See Commonwealth v. Arana, 453 Mass. 214, 228 (2009) ("The first complaint doctrine is an evidentiary rule designed to give support to a complainant's testimony of a sexual assault in cases where the credibility of the accusation is a contested issue at trial").  It so happens that in this case, as in most cases with written first complaints, this testimony also served to authenticate the screenshots.

conversations were omitted." Stuckich, 450 Mass. at 457. We disagree.[3]

The first complaint doctrine "does not . . . prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible." Commonwealth v. Arana, 453 Mass. 214, 221-222 (2009). When considering whether evidence of subsequent complaints was properly admitted, "we ask whether the independently admissible evidence served a purpose other than to corroborate the victim's accusation, and whether that evidence was sufficiently important to a fair understanding of the Commonwealth's case that its probative value outweighed potential prejudice to the defendant." Commonwealth v. Dargon, 457 Mass. 387, 400 (2010).

Here, in conjunction with the father's testimony that on August 17, 2016, he went to Raynham and spoke to the victim and her mother, who then spoke to the defendant over a video telephone call, the victim's testimony about when she "told" her

---

[3] The defendant objected to the first instance, and at defense counsel's request, the judge permitted a voir dire of the victim, who explained that her conversation with her mother happened after her disclosure to her cousin. The defendant did not object to the second instance. Although this would lower our standard of review for the second instance, see Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 (2019) (waived claims of error still subject to review for substantial risk of miscarriage of justice), we need not differentiate, as we conclude that neither instance meets the higher prejudicial error standard.

mother explained to the jury why, after several years, the "same routine" of abuse suddenly stopped on or about August 15, 2016, the date specified in the indictments.  It also put her complaint to her cousin in Guatemala in temporal context.  Thus, in both instances where the victim referenced having "told" her mother, it was to place events in time, not to bolster her credibility.  See, e.g., Dargon, 457 Mass. at 400 (statements served independent purpose where they "provided a complete picture of the timing of the complaint," which was "particularly important" given challenge to victim's credibility).  Moreover, in context, we discern little risk of unfair prejudice from the victim's vague and fleeting testimony that she "told [her] mother about what [the defendant] was doing."  Contrast Arana, 453 Mass. at 227 (victim's testimony about disclosures of sexual assaults to her parents had no direct relevance to defense accusations of police bias and "served only the impermissible purpose . . . of shoring up the credibility of a critical witness against the defendant").

4.  The defendant's statements to the victim.  The defendant argues that his statements to the victim during the video telephone call were not admissible because they were not sufficiently indicative of his guilt without more evidence of the context in which they arose.  We review the judge's

evidentiary ruling for abuse of discretion.  See Commonwealth v. Babcock, 100 Mass. App. Ct. 527, 528 (2021).

The defendant cites Commonwealth v. Andrade, 488 Mass. 522, 535-537 (2021), which discusses the requirements for admissions by silence.  However, the defendant's statements here were not admissions by silence -- they were statements made by a party opponent.  See Mass. G. Evid. § 801(d)(2)(A) (2023).  See also Commonwealth v. Spencer, 465 Mass. 32, 46 (2013) (extrajudicial statement by party opponent exception to rule against introduction of hearsay).  Contrary to the defendant's argument, there is no special or heightened requirement for admitting a defendant's statement under the party opponent exception when it might constitute an admission of guilt.  See Commonwealth v. Anderson, 448 Mass. 548, 563 (2007).

We are not persuaded by the defendant's related argument that his statements were so ambiguous that they were unfairly prejudicial.  Evidence is unfairly prejudicial "only if it has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" (quotation and citation omitted).  Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 188 (2013).  In this case, to the extent the defendant's statements were ambiguous, it was for the jury to determine their meaning.  The defendant's statements were "equivocal response[s] that could be construed as self-

incriminating," and their "meaning properly was a question of fact for the jury." Commonwealth v. Lewis, 465 Mass. 119, 127 (2013).[4]

5. Prosecutor's closing argument. Finally, the defendant raises several issues with the prosecutor's remarks during closing arguments. The defendant did not object to the closing argument at trial. Thus, "[w]e must determine whether there was an error that created a substantial risk of a miscarriage of justice. We appraise the closing argument as a whole as well as the judge's instructions to the jury." Commonwealth v. Grandison, 433 Mass. 135, 142 (2001).

After reviewing the full transcript of the closing argument and focusing on the challenged portions, we conclude that only one statement exceeded proper bounds. The prosecutor told the jury the following after noting that it was "unfortunate" that the examination of the victim did not reveal any physical evidence of sexual assault:

> "[Y]ou are still left with evidence. The testimony is
> evidence. Her Honor will tell you that. And when you
> decide to answer those questions and you'll ask those

---

[4] For largely the same reasons, we are not persuaded that the prosecutor erred in suggesting during closing argument that the jury make the inference that the statements were admissions. Separately, the defendant additionally argues that the admission of his statements violated various constitutional rights, but he cites no cases to support his contention. We are not required to consider arguments not properly raised in the parties' briefs, and we decline to do so here. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

questions, can you be fair, can you have an open mind, can you judge all of the evidence, and that includes testimony. <u>Because that child is also entitled to a fair and just trial, just like he is</u>.  Everybody is.  And that means for you to weigh the evidence which is testimony."  (Emphasis added.)

"It is improper for a prosecutor to characterize a criminal trial as a dispute between a . . . victim on the one hand, and the defendant on the other, and to exhort the jury to dispense justice evenly between them."  <u>Commonwealth</u> v. <u>Niemic</u>, 472 Mass. 665, 676 (2015), <u>S.C.</u>, 483 Mass. 571 (2019).  Nevertheless, we do not perceive this statement as part of a larger strategy to improperly influence the jury.  See, e.g., <u>Commonwealth</u> v. <u>Judge</u>, 420 Mass. 433, 451-452 (1995) (single improper sentence appealing to sympathy did not require new trial).  Where there was no objection to the prosecutor's closing at trial, the improper comment was fleeting, and the judge clearly and forcefully instructed the jury on the Commonwealth's burden of proof and the jury's obligation to consider the evidence impartially, there was no risk that justice was miscarried.  See <u>Grandison</u>, 433 Mass. at 142.

<u>Judgments affirmed</u>.