NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1096

COMMONWEALTH

VS.

RALPH SANCHEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of indecent assault and battery on a person who has attained the age of fourteen, in violation of G. L. c. 265, § 13H; violation of an abuse prevention order, under G. L. c. 209A, § 7; and assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a).[1] On appeal, the defendant argues that the judge abused his discretion by admitting testimony under the first complaint doctrine from a witness (a police officer) who was not the first person to whom

_____

[1] The defendant also was charged with attempt to commit a crime, in violation of G. L. c. 274, § 6; and assault with the intent to commit rape, in violation of G. L. c. 265, § 24. However, both charges were dismissed prior to trial. In addition, the jury acquitted the defendant of an additional charge of assault and battery on a family member, in violation of G. L. c. 265, § 13M (a); and witness intimidation, in violation of G. L. c. 268, § 13B.

the victim spoke about the sexual assault. The judge permitted the substitution after determining that the true first complaint witness, the victim's cousin, was incarcerated out of State and was unavailable to testify. However, as the jury were deliberating, defense counsel learned that the cousin had been extradited to Massachusetts and was present in the court house in connection with an unrelated matter. Although he did not request that the judge declare a mistrial at that time, the defendant now claims that the circumstances required the judge to declare a mistrial sua sponte. We affirm.

1. Background. a. Facts. The defendant and the victim had been in a romantic relationship for a number of years and were the parents of one child. Their relationship deteriorated and, at the time the offenses were committed, there was an abuse prevention order in place prohibiting the defendant from contacting the victim. Notwithstanding the discord between them, the defendant and the victim made an agreement whereby the defendant provided her with child support. The two "would meet somewhere" on Fridays and the defendant would give the victim between $150 and $200.

On Friday, August 11, 2017, the defendant told the victim he could not meet her that day and asked her to come to his residence the following morning to pick up money for the child. The victim agreed to do so and arrived at the defendant's home

2

alone.  When the victim arrived, the defendant said, "[I]f you want the money, you're going to give me ass."  The defendant then took the victim's phone, wallet, and keys and walked into the house.  The victim followed in order to retrieve her belongings.  Once inside, the defendant forced the victim into his bedroom, pinned her down on the bed, and hit her when she began to yell.  The defendant then ripped the victim's pants and pulled them down.  The victim bit and hit the defendant after which she escaped into the living room where the defendant continued the assault.  The victim testified that the defendant "tr[ied] to grope . . . my vagina area from behind."

Once the victim found her belongings, she ran to her car and drove away.  She stopped briefly to call her cousin, Luis Oliva, and then drove to the police station in Revere where she reported the assault to Sergeant Joseph Internicola.  At trial, Sergeant Internicola testified as the Commonwealth's first complaint witness.  He recounted that he "spoke to [the victim] in private" and that the victim told him the defendant "stopped her at the front door, removed his clothes, forcibly ripped her pants off of her, and groped her by touching her vagina."

While the victim was at the station, the defendant arrived with his sister.  According to Sergeant Internicola, the defendant "wanted to give his version of what took place and transpired."  The defendant told Sergeant Internicola that he

3

had been sleeping when the victim entered his apartment.  He explained that the victim woke him up and the two had an argument after the victim accused him of cheating.  The victim began yelling and when she would not stop, the defendant hit her and tackled her onto the bed.  The defendant said he then put his hand over the victim's mouth to prevent her from screaming, which prompted the victim to bite him and hit him.  The defendant also admitted that he had ripped the victim's pants but denied that he sexually assaulted her.  He said that he ripped the victim's pants only to show her what he would do if he was going to rape her.

The defendant testified on his own behalf and provided a slightly different version of events than the one he had given to the sergeant.  Although he acknowledged, as he had to Sergeant Internicola, that he hit the victim, he now claimed that the victim had hit him first and that he had acted in self-defense.  He also testified that the victim wanted to have sex with him and denied that he had ripped the victim's pants.

b.  Motion in limine.  Just before the trial commenced, the Commonwealth filed a motion in limine seeking permission to present first complaint testimony from Sergeant Internicola.[2]  At

_____

[2] On the day of trial, the Commonwealth filed a motion to continue and requested additional time to identify the first complaint witness.  The motion was denied by a judge, who was

4

that time, the Commonwealth's position was that Sergeant Internicola was the first complaint witness. Before ruling on the motion, the judge held a voir dire of the victim. The victim testified that the first person she told about the sexual assault was her cousin, Oliva, who, she alleged, was in custody possibly in Virginia. The victim told Oliva that the defendant "tried to have sex with me." The victim also spoke with another cousin who called her after she spoke with Oliva. At the conclusion of the voir dire, the prosecutor argued that the sergeant should be designated as the first complaint witness because the victim had disclosed the details of the incident to him and not to either cousin. Defense counsel disagreed, contending that the first complaint witness was Oliva. The judge agreed that Oliva was the first person to whom the victim disclosed the assault. However, because Oliva was not available, he allowed the Commonwealth to substitute Sergeant Internicola as the first complaint witness.[3]

c. The discovery that Oliva was in the court house. The trial proceeded and while the jury were deliberating, defense counsel learned that that a person by the name of Jose Oliva was

---

not the trial judge, noting that the Commonwealth "had four to five months to prepare this case for trial."

[3] Specifically, the judge stated that "[i]t's really . . . Mr. Oliva [that is] the first complaint [witness]" but due to his unavailability, "I am going to allow Sergeant Internicola to testify as to the first complaint."

5

present in another court room where he was being arraigned for an unrelated crime and that he was the victim's cousin and the original first complaint witness.[4]  Defense counsel immediately notified the judge of his discovery.  The prosecutor also had just learned that Oliva was present.  She described the timing of Oliva's appearance in court as "incredibly coincidental[]." She explained that Oliva had not agreed to be extradited and the Commonwealth had attempted to obtain a governor's warrant to bring him to Massachusetts.  The prosecutor further stated that unbeknownst to the Commonwealth, Oliva had changed his mind, agreed to extradition, and had just arrived from Virginia where he had been incarcerated.  The judge then asked defense counsel how he wanted to proceed to which he replied that he did not know if he was "in a position to ask for a mistrial" and that he had not yet spoken with his client.  By this time, the jury had reached a verdict.  The judge then indicated that he would take the jury's verdict and that the defendant could file a motion for a new trial.  The judge stated,

> "This is what I'm going to do.  I'm going to take the
> verdict right now.  You still have . . . -- you have a
> motion for new trial, possibly.  I don't know what the -- I
> don't know enough -- it would require . . . further
> evidentiary hearings to see to what extent the complainant
> knew about this or whether there was some other reason or
> delay in the trial would have been possible.  There [are] a

---

[4] Coincidently, defense counsel had been asked to represent Oliva and during an introductory conversation he learned that Oliva was the victim's cousin and the true first complaint witness.

6

lot of different issues that it could raise. As of now I think, considering I've got jurors sit -- that are sitting there, ready to come back with a verdict, you've brought it to the Court's attention, your right[s] are preserved at the moment."

The judge then explicitly asked defense counsel if he was "asking [the judge] to do anything" to which defense counsel responded, "No, . . . . Not at this point."

2. Discussion. a. Admission of substitute first complaint testimony. Although, ordinarily, the first complaint doctrine permits only the "very 'first' complaint witness" to testify, Commonwealth v. King, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006), a judge may make an exception where "the first person told of the assault is 'unavailable.'" Commonwealth v. Alce, 96 Mass. App. Ct. 851, 854 (2020), quoting King, supra. "We review the judge's decision [allowing a substitute first complaint witness] for an abuse of discretion." Alce, supra at 853, quoting Commonwealth v. Lewis, 91 Mass. App. Ct. 651, 657 (2017).

The defendant argues that the judge abused his discretion in allowing Sergeant Internicola to substitute as the first complaint witness because -- given Oliva's presence in the court house on the second day of trial -- it is clear that the Commonwealth's efforts to secure Oliva's presence were inadequate. However, the fact that Oliva was eventually extradited does not necessarily establish that the

7

Commonwealth's efforts to locate him were insufficient. As the judge noted, the questions raised by Oliva's presence, who was being arraigned under a different name, could only be resolved after a hearing. Moreover, at the time the judge made his ruling, he accepted the Commonwealth's representation that Oliva was out of State and in custody. The judge reasoned that because Oliva's unavailability left the Commonwealth "without the ability to call a first complaint [witness] under the circumstances through no-fault of their own," a substitution was warranted. The judge further noted the absence of any indication that the Commonwealth sought to introduce Sergeant Internicola's first complaint testimony for strategic purposes. See Alce, 96 Mass. App. Ct. at 855. Given these circumstances, we conclude there was no abuse of discretion.[5]

    b. Mistrial. As previously noted, the defendant contends that the judge should have declared a mistrial sua sponte upon learning that Oliva was in the court house. The decision whether a mistrial is required is within the discretion of the trial judge. See Commonwealth v. Roman, 470 Mass 85, 97 (2014).

_____

[5] We note also that Sergeant Internicola was the next person to whom the victim reported the sexual assault. See Commonwealth v. Murungu, 450 Mass. 441, 446 (2008) ("The substituted witness should in most cases be the next complaint witness"). Additionally, we note that nothing in King, 445 Mass. at 243, or its progeny prohibits a law enforcement officer from testifying as a substitute first complaint witness.

Contrary to the defendant's assertion, we discern no error of law or abuse of discretion in the decision of the judge not to declare a mistrial.

To begin with, the judge gave defense counsel two opportunities to request some form of remedial action and he chose instead to do nothing.[6]  More importantly, the judge properly addressed the issue by inviting defense counsel to file a motion for a new trial.[7]  The judge noted that the question whether the Commonwealth had used reasonable efforts to obtain Oliva's presence at trial would require an evidentiary hearing. Given these circumstances, the judge did not err or abuse his discretion.[8]

Lastly, the defendant argues that he was denied his right to due process because the judge did not permit defense counsel to confer with him before ruling that the jury would return

---

[6] In addition, the defendant had an incentive to have the verdict returned.  If he was found not guilty, that would be the end of the matter.  If, as happened here, he was found guilty of some of the offenses, he still had the option of filing a motion for a new trial to challenge the first complaint testimony.

[7] It appears that the defendant has not filed a motion for a new trial.

[8] Furthermore, there is nothing in the record to indicate whether Oliva had any recollection of speaking with the victim and, consequently, a mistrial might not have achieved any meaningful result.  At the same time, Oliva may have been a more effective first complaint witness than the sergeant thereby mitigating any prejudice resulting from Oliva's absence.  Both these issues could have been addressed at a hearing had the defendant chosen to file a motion for a new trial.

9

their verdict.  Although it is true that counsel initially indicated that he had not yet spoken with the defendant, it is unclear whether the two had the opportunity to communicate thereafter.  Without more in the record to support the defendant's claim, we are constrained to reject it.

Judgments affirmed.

By the Court (Vuono, Milkey & Hand, JJ.[9]),

Assistant Clerk

Entered:  February 15, 2024.

---

[9] The panelists are listed in order of seniority.