NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-471

COMMONWEALTH

vs.

RONNIE WALKER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Ronnie Walker, appeals from his conviction of aggravated rape of a child following a jury trial in the Superior Court.[1]  Walker argues that the judge erred in admitting first complaint testimony, which consisted of the victim's disclosure to her mother of the rape, because the victim had reported to her mother a week prior that she thought she might have a sexually transmitted disease (STD), without additional details.  This prior report, Walker argues, should have constituted the first complaint, so the evidence of the later disclosure should not have been admitted.  Walker also argues

_____

[1] The defendant also appeals from the orders denying his motion for reduction in verdict or for a new trial and his motion for reconsideration.

that the judge erred in his instructions to the jury regarding the definition of penetration.

As to the first complaint testimony, the judge did not err in determining that the later disclosure was the first complaint, considering that the victim's statement that she thought she might have an STD was vague and did not constitute a complaint that a sexual assault had occurred. Furthermore, the definition of penetration that the judge used is the definition approved by the Supreme Judicial Court. We accordingly affirm.

Background. Based on the evidence at trial, the jury could have reasonably found the following. In the spring of 2020, the victim was fifteen years old. The victim was friends with one Wilson, a senior at her high school. At some point in the spring of 2020 the victim and Wilson made plans to have sex.

In the spring of 2020 the defendant was fifty-five years old, and he worked with Wilson. On the day of the offense, the defendant drove Wilson to a road near the victim's house, and picked up the victim there. The defendant then drove to his cottage in Truro, which all three of them entered. Wilson and the victim went to a bedroom in the back of the cottage; the defendant remained in the living room in the front.

At some point, the defendant interrupted Wilson and the victim by entering the bedroom. The victim was on the bed naked from the waist down, and Wilson was next to her. The defendant

told them to continue what they were doing. When the defendant walked in, the victim said "No." The defendant then walked over, grabbed the victim's legs and spread them apart. He then touched the victim's vagina with his mouth, and began sucking the victim's vagina. The defendant also touched the victim's vagina with his fingers, and may have also touched the victim's buttocks. At some point the defendant stopped assaulting the victim and left the room. All three parties then left the house and entered the defendant's truck, and the defendant dropped the victim off at home.

Walker was indicted on three counts of aggravated rape and abuse of a child, G. L. c. 265, § 23A (b). At trial in 2022 the Commonwealth moved in limine to admit first complaint testimony, and the judge conducted a voir dire of the victim and the victim's mother. The victim testified that in August of 2020, she thought "something was . . . wrong" with her vagina, and that "I thought like I got an STD or something." Her mother testified that she made a doctor's appointment because the victim "was worried that she had an infection or an STD."

Within a few days thereafter, the victim and her mother drove to the doctor's office together. Before entering the doctor's office, the mother asked why the victim thought she had an STD. The victim testified that she was reluctant to talk about what had occurred, but told her mother "that something had

3

happened" and "that an older guy . . . ate me out."  The mother testified that the substance of what the victim told her was that a "big man" who was older "put his fingers in her" and "put his face in her vagina."[2]

Following voir dire, the judge allowed first complaint testimony regarding the conversation between the victim and the mother in the car prior to entering the doctor's office.  The first complaint testimony at trial was consistent with the voir dire testimony.  The mother testified that the victim told the mother that "an older man, somebody that [the mother] knew, put his mouth on her vagina and stuck his fingers inside of her.  And she thought she might have an STD."

The jury convicted the defendant of one count of aggravated rape and abuse of a child ("[m]outh in contact with vagina"), and acquitted him on the other two counts ("[f]inger in anus" and "[f]inger in vagina").

Discussion.  First complaint.  The defendant argues that the trial judge erred by allowing first complaint testimony from the victim and the victim's mother as to the conversation between them in the car.  The defendant argues that this conversation was not the victim's first complaint of sexual

---

[2] The mother testified that the victim was describing "Ronnie" based on the description the victim gave.  The defendant was a customer at the store where the mother worked.

4

assault, and accordingly that testimony regarding this conversation was inadmissible. See Commonwealth v. Arana, 453 Mass. 214, 222-223 (2009) ("in circumstances where a complainant makes successive complaints to the first complaint witness, the initial complaint is the only evidence admissible as first complaint"). Instead, the defendant claims, the victim's statement to her mother a week before the appointment, to the effect that she thought she had an STD, was the first complaint. The defendant further argues that the admission of the later conversation prejudiced him by improperly bolstering the credibility of the victim.

We review a judge's decision to admit first complaint testimony under the abuse of discretion standard. Commonwealth v. Aviles, 461 Mass. 60, 73 (2011). In doing so, we recognize that "[t]he judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence." Id. We perceive no abuse of discretion here.

Our case law does not require judges to limit first complaint testimony to the victim's first intimation of sexual assault, however vague. This issue first arose in Commonwealth

5

v. Murungu, 450 Mass. 441, 443-444 (2008), in which the underage victim, while crying, showed the defendant's sister marks on the victim's neck and said she was "scared" and "didn't know what to do." In determining whether this statement was the first complaint, the court held that another person, other than the very first person informed of the assault, may testify as a first complaint witness when "the encounter that the victim has with the first person does not constitute a complaint, when, for example, the victim expresses to that person unhappiness, upset or other such feelings, but does not actually state that she has been sexually assaulted." Id. at 446. The court explained that to hold otherwise would undermine the doctrine of first complaint, as "[t]estimony of a vague conversation that does not 'complain' that a sexual assault occurred . . . may communicate to the jury that the victim in fact did not complain at all and that, if she had indeed been assaulted, she would have complained with more force and in greater detail." Id. In Murungu, however, the court found that it was not an abuse of discretion for the trial judge to find that the victim's sister qualified as the first complaint witness, as the judge could have decided the marks on the victim's neck "were not conferred with the consent of the victim because of her anguish in displaying them." Id. at 447.

Subsequently, the standard set out in Murungu has been applied to find that a later statement by the victim was the first complaint of sexual assault.  For example, in Commonwealth v. Rivera, 83 Mass. App. Ct. 581, 582-583 (2013), a victim first disclosed to her sister that she had suffered physical abuse from her boyfriend, the defendant; she did not disclose sexual abuse to her sister, however, until after the defendant was forced to leave their shared apartment.  The court held that the victim's initial disclosure of physical abuse did not render her subsequent complaint of sexual abuse inadmissible.  See id. at 584.

In this case, as in Rivera, the victim did not make a complaint of sexual assault the week before the appointment; that is, she did not "state that she [had] been sexually assaulted."  Murungu, 450 Mass. at 446.  See Rivera, 83 Mass. App. Ct. at 584.  Instead, she stated that she thought she might have an STD.  This "vague" statement "that does not 'complain' that a sexual assault occurred" does not prevent the judge from admitting evidence of the victim's subsequent complaint of rape a week later.  Murungu, supra.

Furthermore, allowing only the victim's statement that she had an STD, and not her complaint of rape a week later, would not comport with the purposes of the first complaint doctrine.  Those purposes are twofold:  (1) to "refute any false inference

that silence is evidence of a lack of credibility on the part of [sexual assault] complainants"; and (2) "to give the jury as complete a picture as possible of how the accusation of sexual assault first arose."  Aviles, 461 Mass. at 72, quoting Commonwealth v. King, 445 Mass. 217, 243, 247 (2005), cert. denied, 546 U.S. 1216 (2006).  Limiting the testimony of the victim's mother only to the victim's reference to a possible STD could suggest, falsely, that the victim had stayed silent about the rape.  Furthermore, preventing the jury from hearing the victim's complaint of rape would leave the jury "to speculate on the evidence or to draw erroneous inferences due to incomplete information."  Aviles, supra.

The defendant argues that because the victim was fifteen at the time, and thus incapable of consenting to sexual intercourse, any statement to her mother that she thought that she had an STD was tantamount to a complaint of statutory rape. See Commonwealth v. Wilbur W., 479 Mass. 397, 398 (2018).  But the judge did not abuse his discretion by determining that the victim's initial report of a possible STD or infection was not a complaint of sexual assault, where the victim provided no further details at the time.  Compare Murungu, 450 Mass. at 443-444, 447 (holding that it was not abuse of discretion to admit first complaint testimony that thirteen year old victim was crying, showed first complaint witness marks on her neck, and

8

said she was "scared" and "didn't know what to do" where on basis of evidence presented, "the judge could permissibly have decided that the marks were not conferred with the consent of the victim because of her anguish in displaying them").[3]

Jury instruction. The defendant also argues that the judge's instructions to the jury on the element of sexual intercourse were in error, and created a substantial risk of a miscarriage of justice. Specifically, in his instructions the judge defined sexual intercourse, in part, as follows:

> "Either natural or unnatural sexual intercourse is complete on penetration, no matter how slight, of a person's genital or anal opening.
>
> "In addition to the vagina, the female genital opening includes the anterior parts known as the vulva and labia. Penetration into the vagina itself is not required. Rape can be found if the Defendant's lips came into contact with the victim's vagina, vulva or labia."

The defendant argues that the definition of the "female genital opening" is anatomically incorrect and does not comport

---

[3] Commonwealth v. Asenjo, 477 Mass. 599 (2017), is not to the contrary. In Asenjo, the victim made multiple disclosures of rape, only the last of which implicated the defendant. See id. at 602. The issue before the court was whether that last disclosure should be considered the first complaint, on the grounds that it was the first complaint in which the defendant was identified. See id. at 603. The court ruled that the first complaint doctrine did not require that the complainant identify the defendant as a prerequisite to admissibility, and thus the last disclosure should not have been admitted. See id. Here, in contrast, the victim's report of an STD not only did not identify the defendant, but also did not disclose "actual sexual assault"; it accordingly was not the first complaint. Id., quoting Murungu, 450 Mass. at 446.

with the common law.  However, the definition used by the judge in this case has been specifically affirmed by the Supreme Judicial Court.  See Commonwealth v. Donlan, 436 Mass. 329, 336 (2002) ("the element of penetration required for a rape conviction is established by evidence that [the defendant] touched or came into contact with the victim's vagina, vulva, or labia").  The judge did not err in his instructions as to penetration.

Judgment affirmed.

Orders dated October 18, 2023, and January 10, 2024, affirmed.

By the Court (Henry, Desmond & Englander, JJ.[4]),

Clerk

Entered: March 27, 2025.

---

[4] The panelists are listed in order of seniority.

10